UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
ABRAHAM LESER

                    Plaintiff,

          -against-

U.S. BANK NATIONAL ASSOCIATION,

                    Defendant.
-----------------------------------X
U.S. BANK NATIONAL ASSOCIATION,

          Counterclaim Plaintiff,

          v.

ABRAHAM LESER,

          Counterclaim Defendant.
-------------------------------x

**NOT FOR PRINT OR
ELECTRONIC PUBLICATION**

**MEMORANDUM & ORDER**
09-CV-2362 (KAM)(ALC)

**KIYO A. MATSUMOTO, UNITED STATES DISTRICT JUDGE:**

          Defendant/counterclaim plaintiff U.S. Bank National
Association ("USB") moved to hold non-party witness Robert Lovy
("Lovy") in civil contempt of court for his failure to comply
with this Court's November 12, 2010 Order that Lovy comply with
USB's subpoena seeking documents and testimony issued pursuant
to Fed. R. Civ. P. 45 and served on Lovy on September 7, 2010
(the "subpoena" or "Rule 45 subpoena").  (*See generally* ECF No.
72, Mot. for Order to Show Cause and Mem. of Law in Supp. of
USB's Order to Show Cause ("USB Mem.").)  The Court held a Show
Cause Hearing on March 1, 2011, at which Lovy did not appear.
(Minute Entry, dated 3/1/11.)

As determined at the Show Cause Hearing, and for the reasons set forth below, Lovy is in civil contempt of the Court and the Court: (1) imposes a $500 per diem monetary sanction starting on March 26, 2011, in order to procure Lovy's compliance with Court Orders and the Rule 45 subpoena; and (2) awards reasonable attorney's fees and costs to USB in an amount to be determined in order to compensate USB for damages suffered while attempting to procure Lovy's compliance with its subpoena.

As set forth more fully below, the $500 per diem monetary sanction shall begin to accrue on March 26, 2011, unless Lovy fully purges his contempt by producing documents on or before March 18, 2011, and appearing and testifying at a deposition on or before March 25, 2011.  Should Lovy fail to purge his contempt by close of business on March 25, 2011, USB shall immediately notify the court, and the $500 per diem monetary sanctions shall commence on March 26, 2011 and shall continue until Lovy fully purges his contempt.

Further, if, by April 4, 2011, Lovy continues in his failure to comply with this Court's Orders, including payment of all monetary sanctions, USB shall advise the Court by April 5, 2011, and, in addition to the continuing $500 per diem monetary sanction, the Court will issue an Order directing the United States Marshal to bring Lovy before the Court for incarceration. The incarceration and per diem monetary sanction shall both

continue until such time as Lovy purges his contempt by complying with this Court's Orders and paying all monetary sanctions imposed by the Court.

## BACKGROUND

### I. Underlying Action

The instant case involves two loans allegedly made by USB, totaling $39 million, to two entities controlled by plaintiff and counterclaim defendant Abraham Leser ("Leser"). (*See* ECF No. 1, Compl. against USB ("Compl.") at ¶¶ 5-18; ECF No. 11, Ans. at ¶¶ 5-24; USB Mem. at 1.) USB alleges that Leser's signature appears on most documents executed in connection with the two loans in question, including two personal guaranties for payment provided to USB. (*See* USB Mem. at 2.) Leser contests the genuineness of these signatures. (*See* Compl. at ¶¶ 9, 10, 16, 17.) USB alleges that Lovy notarized one of the guarantees at issue, as well as several other documents related to the loans in question. (*See* USB Mem. at 2.) Accordingly, the parties sought to depose Lovy and have asked him to produce certain documents.

**II. Service of the Federal Rule of Civil Procedure 45 Subpoena and Court Orders**[1]

**A. Proceedings Before Magistrate Judge Carter**[2]

By letter motion filed on December 4, 2009 to Magistrate Judge Andrew L. Carter, USB sought to compel Lovy to produce documents and to appear for a deposition pursuant to a subpoena served upon him. (*See* ECF No. 47, Letter to Hon. Andrew L. Carter, Jr. by USB.) The letter motion explained that USB had served Lovy with a subpoena issued pursuant to Federal Rule of Civil Procedure 45 on October 19, 2009, by substitute service, by serving an individual at Lovy's residence of suitable age and discretion, who accepted service on Lovy's behalf. (*See* ECF No. 46, Certification of Contempt ("Certification") at 2.) The letter motion further explained

---

[1] The Court notes that all service and attempts of service on Robert Lovy have been made to the Lovy's last known residence, located at 3277 Bedford Avenue, 2nd Floor Apt., Brooklyn, New York 11210. USB has confirmed that this address is Lovy's current home address via the white pages and Serving by Irving, Inc., which, in turn, confirmed this address via an Accurint database search. (*See* ECF No. 53, USB Letter dated 6/23/10 at 1; (ECF No. 74, USB Letter, dated 1/18/11 at 1 n.1; ECF No. 78, Am. Aff. of Service, dated 1/26/11.) USB has further confirmed that Lovy used this address to renew his Notary Public Commission on or about November 23, 2009, that Lovy's neighbor confirmed that Lovy resides at this address, that Lovy has two cars registered to him at that address, and that the name "Robert" appears above the bell for the second floor apartment. (ECF No. 38, USB Letter, dated 3/26/10 at 1 n.1; ECF No. 53, USB Letter dated 6/23/10 at 1, 3; ECF No. 78, Am. Aff. of Service, dated 1/26/11.) Moreover, USB's process server testified that he saw a man who identified himself as Lovy exiting the apartment located at this address. (ECF No. 58, SB Letter, dated 8/12/10 & Ex. A)

[2] Although the Court only relies on the actions Lovy took after proper service of the subpoena was effectuated on him on September 7, 2010 in holding Lovy in civil contempt of court, the Court provides details prior to that date in order to set forth the full factual record and to underscore the extent of Lovy's active evasion of service and willful noncompliance with Court orders.

that the subpoena required that Lovy produce documents by November 16, 2009 and appear for a deposition on November 25, 2009, but that Lovy neither produced the documents nor appeared for the deposition by the requested dates, nor provided an explanation for his failure to do so. (*See id.*) By Memorandum and Order dated February 18, 2010 and entered February 19, 2010 (the "February 19, 2010 Order"), Magistrate Judge Carter granted USB's motion to compel and ordered Lovy to produce the requested documents within one week of the service of the February 19, 2010 Order, and to appear for a deposition within three weeks of the service of the February 19, 2010 Order or to show cause by March 22, 2010 why he should not be held in contempt for failure to comply. (*See* ECF No. 29, 2/19/10 Mem. and Order at 9.)

On March 26, 2010, USB filed a letter motion advising Magistrate Judge Carter that Lovy had failed to respond or to show cause in response to the Court's February 19, 2010 Order and requested that the Court enter a Certification of Contempt[3] pursuant to 28 U.S.C. § 636(e). (*See* ECF No. 38, Letter by USB; Certification at 1, 3.) The letter explained that, on February 23, 2010, USB had served Lovy with a copy of the February 19, 2010 Order by "nail and mail" after several attempts were made

_____

[3] USB initially moved for an order of contempt, and subsequently moved for a Certification of Contempt pursuant to 28 U.S.C. § 636(e). (Certification at 1.)

to personally serve Lovy.[4]  (*See* ECF No. 38, Letter by USB;
Certification at 3.)

On April 15, 2010, Magistrate Judge Carter issued an
Order directing Lovy to appear on April 28, 2010 to show cause
why he should not be held in contempt of court for failing to
abide by the Court's February 19, 2010 Order and warned Lovy
that failure to appear may result in sanctions.  (*See* 4/15/10
Order.)  USB served a copy of the April 15, 2010 Order on Lovy
by hand delivery and by UPS.  (*See* Certification at 4.)  By
Order dated April 27, 2010, the show cause hearing was adjourned
to May 6, 2010.  (4/27/10 Order ("Due to unforeseen scheduling
conflict that has arisen, the 4/28/2010 show cause hearing and
status conference have both been adjourned to 5/6/10.").)
Magistrate Judge Carter again warned Lovy that his failure to
appear may result in sanctions.  (*See id.*)  Magistrate Judge
Carter ordered USB to notify Lovy of the adjournment as soon as
possible and, additionally, to serve the April 27, 2010 Order
notifying Lovy of the adjournment date of May 6, 2010 via UPS by
May 3, 2010.  (*See id.*)

On May 6, 2010, Magistrate Judge Carter held a Show
Cause Hearing at which Lovy did not appear.  (*See id.*; ECF No.

---

[4] The letter also explained that on March 9, 2010, USB wrote a letter to Lovy
requesting documents and potential subpoena dates.  (*See* Certification at 3.)
On March 23, 2010 USB sent Lovy a final request, via UPS overnight delivery,
for a response to Magistrate Judge Carter's February 19, 2010 Order.  (*See
id.*)  UPS advised USB that Lovy refused to accept the letter and that, as a
result, it could not be delivered.  (*See id.*)

43, Minute Entry for 5/6/10 Show Cause Hearing.)  Magistrate

Judge Carter issued a Certification of Contempt on May 14, 2010,

certifying to the undersigned the facts which Magistrate Judge

Carter found to be sufficient to hold Lovy in civil contempt and

recommending that Lovy be directed to appear before the

undersigned to show cause why he should not be found in civil

contempt for failing to comply with the subpoena served on him

and with Court orders.  (Certification at 4.)

### B.    Proceedings Before this Court

Based on the facts contained in the Certification of

Contempt, on June 4, 2010, this Court issued an Order to Show

Cause and granted the parties leave to move for contempt.[5]  (ECF

---

[5]  The record reflects that USB's process server attempted to serve Lovy with
the June 4, 2010 Order to Show Cause numerous times – specifically, on June
8, 2010 at 8:51 P.M., June 9, 2010 at 6:31 A.M. until 7:43 A.M.; June 9, 2010
at 9:14 P.M.; June 10, 2010 at 7:34 A.M. until 9:08 A.M.; and June 10, 2010
at 12:45 P.M.  (ECF No. 51, Aff. of Service.)  On June 10, 2011, the process
server spoke to one of Lovy's neighbors who told the process server that Lovy
was out of town and that he did not know when he would return.  (*See id.)*
Subsequently, the Court granted USB's request to continue to attempt to serve
Lovy personally through June 23, 2010 and denied its request to affix the
papers to the door of Lovy's residence and then mail a copy of the papers by
first class mail to Lovy's address ("nail and mail").  (6/14/10 Order.)  By
June 23, 2010, USB had unsuccessfully attempted to serve Lovy at his home an
additional nine times, expending a total of twenty-five hours in its
attempts.  (ECF No. 53, Letter by USB.)  Specifically, the process server
attempted to serve Lovy on June 15, 2010 at 7:51 P.M. until 10:15 P.M.; June
16, 2010 at 6:55 A.M. until 9:06 A.M.; June 17, 2010 at 5:06 P.M. until 8:31
P.M.; June 18, 2010 at 6:39 A.M. until 8:45 A.M.; June 21, 2010 at 12:01 P.M.
until 2:13 P.M.; June 21, 2010 at 7:06 P.M. until 10:55 P.M.; June 22, 2010
at 7:05 A.M. until 10:22 A.M.; June 22, 2010 at 5:15 P.M. until 9:15 P.M.;
and June 23, 2010 at 6:55 A.M. until 9:01 A.M.  (ECF No. 53, Aff. of Service,
dated 6/23/10.)  The process server attested that on several of his visits,
he observed that the air conditioner and lights were on in Lovy's home.  (*See
id.*)  He further stated that on June 22, 2010 at about 7:05 P.M., a young
male in his 20's drove a Mini Cooper onto the driveway and, upon seeing the
process server, reversed the car and left the premises.  (*See id.*)  The
process server again spoke to one of Lovy's neighbors who said she had not
seen Lovy for several days.  (*See id.*)

No. 49, Order to Show Cause, dated 6/4/10.)  However, upon further discussions with the parties, the Court discovered that the original subpoena the parties sought to enforce had been served on Lovy by substitute service without any attempts at personal service.  Because the Court was not convinced that substitute service of the subpoena on a person of suitable age and discretion at Lovy's address, without more, complied with the service requirements of Rule 45 — i.e. that it was reasonably designed to ensure Lovy's actual receipt of the subpoena and reasonably calculated under the circumstances to provide Lovy with notice and an opportunity to provide objections, the Court vacated its June 4, 2010 Order to Show Cause and dismissed the motion for contempt without prejudice. (Minute Entry, dated 6/25/10.)  The Court then ordered USB to effect proper service of the subpoena on Lovy in a manner prescribed by Rule 45.  (*Id.*)

On August 6, 2010, after numerous attempts,[6] USB was able to serve Lovy personally with the subpoena,[7] and requested that this Court enter an order compelling Lovy's compliance with the subpoena by a date certain and that this Court issue an

---

[6]  Specifically, USB reported to the court that its process server made seven unsuccessful attempts to serve Lovy from June 25, 2010 to July 9, 2010, and was again unable to personally serve Lovy between July 9, 2010 and July 30, 2010.  (*See* ECF No. 54, Letter by USB; ECF. No. 56, Letter by USB).
[7]  On August 12, 2010 at 11:42 A.M., a process server personally served Lovy with a subpoena dated October 16, 2009.  (*See* ECF No. 58-1, Aff. of Service.) When served, Lovy pushed the papers to the ground and drove away in his car. (*See id.*)  Lovy's neighbor later collected the papers from the ground.  (*See id.*)

Order to Show Cause as to why Lovy should not be held in civil contempt of court. (*See* ECF No. 58, USB Letter, dated 8/12/10; ECF No. 58-1, Aff. of Service, dated 8/12/10.) After reviewing USB's papers, however, the Court noted that USB had served Lovy on August 6, 2010 with a stale subpoena dated October 16, 2009 and containing expired return dates of November 16, and 25, 2009. (Minute Entry, dated 8/25/10.) The Court alerted the parties to this deficiency in a telephone conference on August 25, 2010 and granted the parties leave to move to serve Lovy with an updated subpoena by alternative means. (*Id.*)

USB so moved on September 2, 2010. (ECF No. 61, USB Letter, dated 9/2/10). Upon the legal and factual bases contained in USB's letter, including but not limited to USB's showing that it had attempted to personally serve Lovy over 35 times, that Lovy had purposefully evaded service,[8] and that additional costs and delays would result by requiring further attempts at personal service, the Court granted USB's motion for alternative service of an updated subpoena on Lovy.[9] (9/3/10

---

[8] For example, Lovy drove away in his car when approached by USB's process server, refused to accept a UPS delivery at his residence from USB's attorneys, and pushed a subpoena to the ground when handed it by USB's process server. (ECF No. 61, USB Letter, dated 9/2/10.)

[9] In authorizing such alternative service, this court agreed with the reasoning of other courts in the Second Circuit, which have held that effective service of a subpoena under Rule 45 is not limited to personal service, but "requires only delivery which reasonably ensures actual receipt by a witness," *Beare v. Millington*, No. 07-CV-3391, 2010 WL 234771, at *4 (E.D.N.Y. Jan. 13, 2010), where it is established that personal service has been diligently attempted, and the witness appears to be aware of the service attempts. *Cadlerock Joint Venture, L.P. v. Adon Fruits & Vegetables Inc.*,

Order.)  The Court further found that, under the circumstances, service of an updated subpoena by "nail and mail" was reasonably designed to ensure actual receipt by Lovy and reasonably calculated to provide Lovy with notice and an opportunity to provide objections.  (*Id.*)

On September 7, 2010, USB served Lovy by "nail and mail" with a subpoena that required him to produce documents by September 27, 2010 and to appear for a deposition on September 29, 2010.  (*See* ECF No. 66, USB Letter, dated 10/22/10; *see also* ECF. No. 69, 11/12/10 Order.)  Lovy did not comply with the subpoena and, as a result, by letter dated October 22, 2010, USB moved for an order compelling Lovy to produce documents and to provide testimony.  (*See* ECF No. 66, USB Letter, dated 10/22/10.)

By Order dated November 12, 2010, this Court granted USB's motion to compel Lovy's compliance with the subpoena and ordered Lovy to produce documents by December 10, 2010 and to appear for a deposition at 9:30 a.m. on December 16, 2010 at USB's counsel's office.  (ECF No. 69, 11/12/10 Order.)  The Order explicitly stated that if Lovy did not comply with the

---

No. 09-CV-2507, 2010 WL 2346283, at *3-4 (E.D.N.Y. Apr. 21, 2010), Report and Recommendation adopted, 2010 WL 2346276, at *2-4 (E.D.N.Y. June 8, 2010). *See also Cartier v. Geneve Collections, Inc*., No. 07-CV-0201, 2008 WL 552855, at *1 (E.D.N.Y. Feb. 27, 2008) ("This Court agrees with the reasoning of a growing number of courts that have held that 'delivery' under Rule 45 means a manner of service reasonably designed to ensure actual receipt of a subpoena by a witness, rather than personal service.")

mandates in the Order, the Court would issue an Order to Show
Cause, requiring Lovy to show cause why he should not be held in
civil contempt of Court. (*Id*.) The Court also warned Lovy that
his continued noncompliance with the Court's orders and the Rule
45 subpoena served upon him would subject him to sanctions
including but not limited to: (1) monetary sanctions for each
day he failed to comply with the Rule 45 Subpoena and the
Court's November 12, 2010 Order; and (2) an order directing the
United States Marshal to bring him to Court. (*Id.*) The Clerk
of the Court served Lovy with the November 12, 2010 Order via
Federal Express and filed a certificate of service on the
docket. (*See* ECF No. 76, Certificate of Service.)

On December 16, 2010, USB apprised the Court that Lovy
had failed to produce documents or to appear at his deposition
in accordance with the November 12, 2010 Order. (ECF No. 71,
USB Letter, dated 12/16/10). Accordingly, on December 23, 2010,
this Court granted USB leave to move by Order to Show Cause to
hold Lovy in civil contempt. (12/23/10 Order.) The Court
further ordered that, by January 14, 2010, USB personally serve
Lovy with a copy of USB's contempt motion papers in accordance
with Rule 83.9 of the Local Rules of the Easter District of New
York ("Local Rules") and section 308 of the New York Civil

Procedure and Civil Practice Law and Rules ("C.P.L.R.").[10]  The

Court directed USB to serve copies of the subpoena previously

served on Lovy on September 7, 2010, the Court's November 12,

2010 Order, and the Court's December 23, 2010 Order along with

its contempt motion.  (*Id.*)

　　　USB electronically filed its contempt motion on

January 7, 2011, which included a Memorandum of Law in support

of its request for an Order to Show Cause, the Affidavit of

Michael DiCanio, Esq. in support thereof, and supporting

exhibits, all of which set forth the factual and legal bases as

to why Lovy should be held in civil contempt of court.  (*See

generally* ECF No. 72, USB Mem.)

　　　Despite USB's attempts to personally serve Lovy nine

times during different times of the day over the course of a

week,[11] USB was unable to effect personal serve of its contempt

---

[10] Local Rule 83.9 provides that a proceeding to adjudicate a person in civil contempt "shall be commenced by the service of a notice of motion or order to show cause."  Where, as here, the alleged contemnor has not appeared by an attorney in the action, Local Rule 83.9 mandates that "service shall be made personally, in the manner provided for by the Federal Rules of Civil Procedure for the service of a summons."  Local Rule 83.9.  Under Federal Rule of Civil Procedure 4(e)(1), service of a summons and complaint can be made, *inter alia*, "pursuant to the law of the state in which the district court is located."  Fed. R. Civ. P. 4(e)(1).  Under New York state law, service of a summons and complaint upon an individual is governed by C.P.L.R. § 308, which authorizes such service by "nail and mail" after personal service as set forth in C.P.L.R. § 308(1) and (2) "cannot be made with due diligence."  C.P.L.R. § 308(4); *see also Warner Bros. Records, Inc. v. Barry*, No. 07-CV-1092, 2008 WL 1320969 at *3 (S.D.N.Y. Apr. 9, 2008)("Nail and mail" service of a summons "is valid only upon showing that (1) diligent efforts were made to effect service by an "in hand" personal delivery to the defendant, or to a person of suitable age followed by a mailing to the defendant ('leave and mail'); and (2) such efforts failed.")
[11] Specifically, the process server attempted to serve Lovy on January 10, 2011 at 8:00 P.M.; on January 11, 2011 at 2:00 P.M.; on January 12, 2011 from

motion on Lovy, and, accordingly, moved for leave to serve Lovy by "nail and mail" on January 18, 2011. (ECF No. 74, USB Letter, dated 1/18/11.) Given the legal and factual bases contained in USB's letter, including USB's multiple attempts to serve Lovy and Lovy's history of purposeful evasion of service, on January 19, 2011, this Court found that personal service could not be made with "due diligence," as set forth in C.P.L.R. § 308(4). (1/19/11 Order.) The Court accordingly authorized service on Lovy via "nail and mail" of: (1) its January 19, 2011 Order authorizing "nail and mail" service; (2) a copy of USB's contempt motion papers; and (3) the other documents required to be served on Lovy pursuant to the Court's December 23, 2010 Order. (*Id.*) These documents were affixed to Lovy's door on January 20, 2011 and mailed to him via First Class Mail on January 21, 2011. (*See* ECF No. 79, Aff. of Service, dated 1/26/11.)

On January 27, 2011, this Court issued an Order to Show Cause setting a Show Cause Hearing for March 1, 2010 and requiring that Lovy submit his Show Cause Response by February 21, 2011. (ECF No. 80, 1/27/11 Order to Show Cause at 1, 4.) The Court's Order to Show Cause warned Lovy that his failure to

---

7:10 P.M. until 8:30 P.M.; on January 12, 2011 from 6:00 A.M. to 10:00 A.M.; and from 7:30 P.M. to 8:30 P.M.; on January 14, 2011 at 3:15 P.M. and at 7:00 P.M.; and finally on January 17, 2011 from 6:40 A.M. to 10:00 A.M. (*See* ECF No. 74, USB Letter, dated 1/18/11; ECF No. 74-1, Aff. of Attempted Service, dated 1/18/11; ECF No. 78, Am. Aff. of Attempted Service, dated 1/24/11.)

appear at the Show Cause Hearing would subject him to civil contempt and sanctions, including but not limited to: (1) monetary sanctions for each day he failed to comply with the Rule 45 Subpoena and this Court's orders; (2) payment of attorney's fees; (3) payment of other costs; and (4) possible arrest for civil contempt of court. (*See id.* at 2.)  The Order to Show Cause notified Lovy that he was "a defendant in a contempt hearing and face[ed] the possibility of incarceration if [he was] found to be in civil contempt" and that, "[a]ccordingly, he [had] the right to be represented by counsel." (*Id.*)  The Court also stated that if Lovy could demonstrate that he could not "afford an attorney, the Court [would] appoint an attorney for [him] at no cost to [him]." (*Id.*)

The Court ordered USB to personally serve Lovy with the Order to Show Cause in accordance with Local Rule 83.9 and C.P.L.R. § 308. (*Id.* at 4-5.)  Additionally, the Clerk of the Court served a copy of the Order to Show Cause on Lovy via Federal Express.  (ECF No. 81, Certificate of Service, dated 1/28/11.)

USB's attempted personal service of this Court's Order to Show Cause on Lovy again proved fruitless,[12] and USB

_____

[12]  The process server attempted to serve Lovy at his residence five times between January 31 and February 5, 2011 – specifically, on January 31, 2011 from 6:00 P.M. to 9:00 P.M.; February 1, 2011 at 12:30 P.M.; February 2, 2011

accordingly moved on February 4, 2011 for leave to serve Lovy with the Court's Order to Show Cause by "nail and mail" in lieu of personal service. (*See* ECF No. 83, USB Letter, dated 2/4/10.) Given the legal and factual bases contained in USB's letter, including USB's repeated attempts to serve Lovy and Lovy's deliberate evasion of personal service of process, the Court found that personal service could not be made with "due diligence" pursuant to C.P.L.R. § 308(c)(4). (2/7/11 Order.) Accordingly, the Court authorized service by "nail and mail," and ordered that USB serve Lovy by February 9, 2011 with: (1) this Court's February 7, 2011 Order; (2) this Court's January 27, 2011 Order to Show Cause; and (3) USB's February 4, 2011 letter to the Court. (*Id.*) These documents were mailed to Lovy via UPS on February 4, 2011 and affixed to his door on February 9, 2011. (*See* ECF No. 84, Aff. of Service, dated 2/8/11; ECF No. 86, Aff. of Service, dated 2/10/11.)

The Court held the Show Cause Hearing on March 1, 2011 and, after Lovy failed to appear, the Court held Lovy in civil contempt of court and explained that it would impose monetary sanctions in an amount to set forth in an opinion to follow.[13]

---

at 3:20 P.M.; February 3, 2011 from 5:30 A.M. to 7:00 A.M.; and February 4, 2011 at 10:05 A.M. (*See* ECF No. 83, USB Letter, dated 2/4/10; ECF No. 83-1, Aff. of Attempted Service, dated 2/4/11.)

[13] After the Show Cause Hearing on March 1, 2011, the Court received a phone call from a man who identified himself as an attorney considering representing the plaintiff, Mr. Leser, in this case. (*See* Minute Entry, dated 3/2/11.) The caller did not provide his name and inquired about the last docket entries the Court had entered in this case. (*Id.*) When the

(Minute Entry, dated 3/1/11 ("Despite being served with an Order to Show Case and USB's motion for Contempt, Mr. Lovy did not appear, and the court did not receive any papers opposing USB's contempt motion . . . Mr. Lovy is held in civil contempt of court.")

On March 15, 2011, fourteen days after the Show Cause hearing, an attorney appeared on Mr. Lovy's behalf on the docket, and moved, with USB's consent, by letter motion to stay "all proceedings relating to the finding of contempt against Mr. Lovy," pending Lovy's promised appearance at a deposition on March 25, 2011.  (ECF No. 96, Notice of Appearance; ECF No. 97, Letter Mot., dated 3/15/11.)  The letter motion stated that Lovy had assured his counsel that he "never intended to disrespect the Court or [to] disobey its orders" but that Lovy's "failure to appear for a deposition as originally requested by defendant was the result of errors in judgment based on other unrelated events occurring in his personal life."  (*Id.*)  The letter motion did not explain why Lovy actively evaded service, failed

---

Court's law clerk asked the caller to clarify whether he was considering representing Mr. Leser, the plaintiff, or Mr. Lovy, the subject of that day's Show Cause Hearing, the caller first corrected the clerk's pronunciation of Mr. Lovy's name, and then insisted that he was considering representing the plaintiff, Mr. Leser.  (*Id.*)  The caller then asked the law clerk whether the Court had authorized substitute service of the Order to Show Cause.  (*Id.*) The Court thereafter contacted counsel of record for the plaintiff and informed him of this conversation.  (*Id.*)  Plaintiff's attorney spoke with plaintiff, who confirmed that he was not attempting to retain new counsel. (*Id.*)  On March 8, 2011, the Court held a conference call with counsel for USB and Leser to discuss the March 1, 2011 phone call.  (*See* Minute Entry, dated 3/8/2011.)

to comply with this Court's Orders, failed to appear at the March 1, 2011 Show Cause Hearing, or failed to contact the Court or USB about "events occurring in his personal life" that should excuse his compliance with Court Orders.  (*Id.*)

On March 17, 2011, USB filed a letter in response to Lovy's letter motion, requesting that the Court stay the enforcement of its Order holding Lovy in contempt of court and imposing monetary sanctions pending Lovy's production of documents responsive to USB's subpoena on or before March 18, 2011 and appearance for a deposition on March 25, 2011.  (ECF No. 98, USB Letter, dated 3/17/11.)  Should Lovy fail to produce documents and appear for the deposition, USB requests that the Court impose the monetary sanctions set forth in USB's Letter, dated March 4, 2011.  (*Id.*)

## DISCUSSION

### I.  The Court's Inherent Contempt Power

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt," *In re Martin-Trigona*, 732 F.2d 170, 173 (2d Cir. 1984) (quoting *Shillitani v. United States,* 384 U.S. 364, 370 (1966)) (internal quotation marks omitted), and thus can sanction an individual or entity that fails to comply with the court's discovery orders when certain conditions are met.

Pursuant to Federal Rule of Civil Procedure 45(e), an "issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena."[14] *See Beare v. Millington*, No. 07-CV-3391, 2010 WL 234771, at *3 (E.D.N.Y. Jan. 13, 2010) (stating that unless the subpoena is improperly issued or the non-party has an adequate excuse, failure to comply with a subpoena made under Rule 45 may be deemed contempt of court) (citing Fed. R. Civ. P. 45(e)).

Further, under 18 U.S.C. § 401(3), the Court is empowered to enforce compliance with its orders through civil contempt. 18 U.S.C. § 401(3) ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."). "Indeed, the judicial power to hold a non-party who has failed to obey a valid subpoena in contempt is the primary mechanism by which a court can enforce a subpoena." *Beare*, 2010 WL 234771, at *3 (citing David D. Siegel, Fed. R. Civ. P. 45, Practice Commentaries, C45-26).

---

[14] Further, under Federal Rule of Civil Procedure 37(b)(1), a deponent may be sanctioned for failure to comply with a court order. Specifically, the Rule states, "[i]f the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court." Fed. R. Civ. P. 37(b)(1).

## II. Finding of Civil Contempt

### a. Notice of Contempt Hearing and the Right to Counsel

Before the Court can hold a person in civil contempt, due process requires that the person be given notice that he or she is a defendant in a contempt hearing, and, if he or she faces possible incarceration, that he or she be afforded the right to counsel. *See Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Tamraz*, 97-CV-4759, 2006 WL 1643202, at *3 (S.D.N.Y. June 13, 2006); *see also Drywall Tapers & Pointers, Local 1974 etc. v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n*, 889 F.2d 389, 394 (2d Cir. 1989) ("Due process requires that before being held in contempt, a party must have notice that it is a defendant in a contempt hearing.") (citing Fed. R. Crim. P. 42(b)); *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 109-10 (2d Cir. 1987) (same); *Z-Int'l, Inc. v. Z Line Int'l, Inc.*, No. 02-CV-8646, 2005 WL 1580609, at *4 (S.D.N.Y. July 6, 2005) ("Before imposing sanctions on a person charged with civil contempt, due process requires that the person receive notice and an opportunity to be heard.") (citing *Sterling Nat'l. Bank v. A-1 Hotels Int'l, Inc.*, No. 00-CV-7352, 2004 WL 1418201, at *2 (S.D.N.Y. June 23, 2004)).

Here, there is no question that the service of USB's contempt motion and this Court's January 27, 2011 Order to Show Cause put Lovy on notice of the civil contempt proceedings

instituted against him, of his right to be heard, and his right to counsel at these proceedings. First, USB's contempt motion put Lovy on notice that USB was moving to hold him in contempt, that USB was seeking the imposition of per diem monetary sanctions to compel his compliance, as well as recovery of attorney's fees and costs, and that, if Lovy failed to appear at the Show Cause Hearing, USB requested that the Court issue an order requiring the United States Marshal to bring Lovy before the Court to appear for a deposition. (USB Mem. at 6-7.)

Additionally, this Court's January 27, 2011 Order to Show Cause explicitly notified Lovy, in boldface letters and in no uncertain terms, that he: (1) was a defendant in a civil contempt hearing; (2) faced the possibility of incarceration if he was found to be in civil contempt; (3) had the right to an attorney at the hearing, and one would be appointed to him if he could demonstrate that he could not afford an attorney; (4) had the opportunity to oppose the contempt motion both through opposition papers filed with the Court and in person at the Show Cause Hearing; and (5) must appear in person at 2 p.m. on March 1, 2011 before this Court to show cause why he should not be held in civil contempt. (ECF No. 80, 1/27/11 Order to Show Cause at 4.) The Order to Show Cause further warned Lovy that his failure to appear at the Show Cause hearing would subject him to sanctions, "including but not limited to the imposition

of monetary fine for every day that [he] fail[ed] to comply with
the Rule 45 subpoena and this Court's orders, attorney's fees
and costs[,]" and that he would "also be subject to arrest for
civil contempt of court."  (*See id.* at 2.)

As set forth, *infra*, Lovy was properly served with
both USB's contempt motion papers and with this Court's Order to
Show Cause in accordance with Local Rule 83.9, Federal Rule of
Civil Procedure 4(e)(1), and C.P.L.R. § 308.  Specifically, USB
served Lovy with its contempt motion papers and with a copy of
the Court's Order to Show Cause by "nail and mail" after this
Court found that personal service of both the contempt motion
and Order to Show Cause could not be made with "due diligence."
(*See* 1/19/11 Order; ECF No. 79, Aff. of Service, dated 1/26/11;
2/7/11 Order; ECF No. 84, Aff. of Service, dated 2/8/11; ECF No.
86, Aff. of Service, dated 2/10/11). *See, e.g.*, *State of N.Y.
Higher Educ. Servs. Corp. v. Sparozic*, 35 A.D.3d 1069, 1071-72,
826 N.Y.S.2d 493 (3d Dep't 2006) (authorizing service of summons
by "nail and mail" after three attempts at personal service were
made on different weekdays at different times of day); *see also
Prosperity Partners, Inc. v. Bonilla*, No. 04-1362, 2005 WL
1661702, at *2 (E.D.N.Y. July 14, 2005) (finding "nail and mail"
service of a summons proper after four attempts at personal
service at defendant's home).  Additionally, the Court served

Lovy with the Order to Show Cause via Federal Express on January

31, 2011.  (ECF No. 81, Certificate of Service.)

The Court accordingly finds that Lovy had been

sufficiently notified of the contempt proceedings against him,

of his right to counsel, and of the possible ramifications of

his nonattendance.

### b. Standards Governing Civil Contempt

Generally, a contemnor may be held in civil contempt

for failure to comply with a court order if: (1) the court's

order is clear and unambiguous; (2) the evidence of the

contemnor's noncompliance is clear and convincing; and (3) the

contemnor did not diligently attempt to comply in a reasonable

manner.  *See Paramedics Electromedicina Comercial, Ltda. v. GE

Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004);

(quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d

Cir. 1995)).  It is not necessary to establish that the

contemnor's noncompliance was willful.  *See id.* (citing *Donovan

v. Sovereign Sec. Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984)).

### i. The Orders that Lovy Failed to Comply With Were Clear and Unambiguous

The first prong requires that the court order the

contemnor failed to comply with is clear and unambiguous.  "A

clear and unambiguous order is one specific and definite enough

to apprise those within its scope of the conduct that is being

22

proscribed." *Medallic Art Co., Ltd. v. Novus Mktg., Inc.*, No. 99-CV-502, 2003 WL 22053130, at *1 (S.D.N.Y. Sept. 2, 2003) (quoting *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989) (internal quotation marks omitted)). Further, a clear and unambiguous order allows for "no uncertainty in the minds of those to whom it is addressed." *Hess v. New Jersey Transit Rail Operations, Inc.*, 846 F.2d 114, 116 (2d Cir. 1988) (citing *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967) and *Powell v. Ward*, 643 F.2d 924, 931 (2d Cir. 1980), *cert. denied*, 454 U.S. 832 (1981)).

Here, Lovy has failed to comply with the Court's November 12, 2010 Order and its January 27, 2011 Order to Show Cause (collectively, the "Orders"), both of which were clear and unambiguous, in addition to the Rule 45 subpoena. (*See* 11/12/10 Order; 1/27/11 Order.) The record establishes that, despite being properly served with a Rule 45 subpoena, Lovy failed to produce documents or to appear for a deposition on the date and time specified, and offered no excuse for his failure to obey the subpoena. Further, this Court's November 12, 2010 Order clearly ordered Lovy to comply with the Rule 45 subpoena served on him, and provided the time, date, and place by which to produce documents and appear for a deposition. (*See* ECF No. 69, 11/12/10 Order (ordering Lovy to "produce the documents required

23

by the [Rule 45] subpoena on or before December 10, 2010 to
Michael DiCanio, Reed Smith LLP, 599 Lexington Avenue, 28th
Floor, New York, New York 10022 and to appear for a deposition
at 9:30 a.m. on December 16, 2010 at the offices of Reed Smith
LLP" at the same location).)  The November 12, 2010 Order
further warned Lovy that his failure to comply with the Court's
Orders and the Rule 45 subpoena served upon him could subject
him to a finding of civil contempt and sanctions, including
monetary sanctions for each day he failed to comply with the
Rule 45 subpoena and the Court's November 12, 2011 Order, as
well as an order directing the United States Marshal to bring
him to Court.  (*Id.*)

Further, the Court's January 27, 2011 Order to Show
Cause was also clear and unambiguous as to what it required of
Lovy.  (*See* 1/27/11 Order.)  The Order to Show Cause clearly
ordered Lovy to appear "before United States District Judge Kiyo
A. Matsumoto at the United States District Courthouse of the
Eastern District of New York, 225 Cadman Plaza East, Brooklyn,
New York, 11201, in Courtroom N 6F at 2:00 p.m. on March 1,
2011," to show cause why he should not be held in civil contempt
for failure to comply with the Rule 45 subpoena that was served
on him on September 7, 2010.  (*See id.* at 1, 2.)  It further
informed Lovy that if he failed "to appear before the United
States District Judge Kiyo A, Matsumoto in Courtroom N 6F at

2:00 p.m. on March 1, 2011" he would be subject to a finding of civil contempt, "sanctions, including but not limited to the imposition of a monetary fine for every day that [he] fail[ed] to comply with the Rule 45 subpoena and this Court's orders, attorney's fees, and costs," and that he would "also be subject to arrest for civil contempt." (*See id.* at 2.)

Thus, this Court's Orders were clear and unambiguous, and left no room for "uncertainty in the minds of those to whom [they were] addressed." *Hess*, 846 F.2d 114, 116; *see also Tamraz*, 2006 WL 1643202, at *4 (finding an Order that stated location, time, and date of deposition and ordering contemnor to comply was clear and unambiguous). The first prong is accordingly satisfied.

### ii. The Proof of Lovy's Noncompliance Is Clear and Convincing

The second prong requires that evidence of the contemnor's noncompliance be clear and convincing. The "clear and convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." *Leadsinger v. Cole*, No. 05-CV-5606, 2006 WL 2266312, at *9 (S.D.N.Y. Aug. 4, 2006) (quoting *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (internal quotation marks omitted)).

Here, the proof of Lovy's noncompliance with this Court's Orders is clear and convincing. As set out, *infra*, Lovy was served with both Orders by both USB and by this Court. Despite being served with these Orders, Lovy has yet to comply with them. Specifically, as this Court noted in its January 27, 2011 Order to Show Cause, Lovy did not comply with the Court's November 12, 2010 Order, which had required him to produce documents as required by the Rule 45 subpoena on or before December 10, 2010, and to appear for deposition testimony on December 16, 2010. (*See* 1/27/11 Order at 2.) Subsequently, Lovy did not comply with this Court's January 27, 2011 Order to Show Cause, which, required him to appear before the Court at the Show Cause hearing on March 1, 2011. (*See* Minute Entry, dated 03/01/11.) Accordingly, the second prong is satisfied.

### iii. Lovy has Made No Attempt to Comply with this Court's Orders

Finally, "there can be no finding of contempt if it has been shown that the alleged contemnor has been 'reasonably diligent and energetic in attempting to accomplish what was ordered.'" *Leadsinger*, 2006 WL 2266312, at *9 (quoting *Equal Employment Opportunity Comm'n v. Local 638*, 753 F.2d 1172, 1178 (2d Cir. 1985). The record is clear that Lovy did not comply with this Court's Orders, and there is absolutely no evidence in the record that Lovy was reasonably diligent in attempting to

comply, but was somehow frustrated in doing so. To the contrary, the record reflects that Lovy actively evaded service of this Court's Orders and intentionally disregarded them.[15] Indeed, the letter motion filed by Lovy's attorney fourteen days after this Court held Lovy in civil contempt offers further evidence that Lovy knew of the depositions he was compelled to attend, and nonetheless decided not to attend. (ECF No. 97, Letter Mot., dated 3/15/11 (explaining that Lovy's "failure to appear for a deposition as originally requested by defendant was the result of errors in judgment based on other unrelated events occurring in his personal life").)

Therefore, as held at the March 1, 2011 Show Cause hearing, Lovy is in civil contempt of court for his failure to comply with this Court's clear and unambiguous Order dated November 12, 2010 and Order to Show Cause, January 27, 2011.[16]

## III. Appropriate Sanctions

The Court now turns to the appropriate sanctions to impose for Lovy's civil contempt. Civil contempt sanctions may serve to: (1) secure future compliance with the court's orders (a "coercive sanction"); and (2) compensate the wronged party (a "compensatory sanction.") *See Paramedics*, 369 F.3d at 657

---

[15] *See* footnote 8, *supra*.
[16] Lovy cannot avoid the finding of civil contempt by promising to attend a deposition on March 25, 2011. (ECF No. 97, Letter Mot., dated 3/15/11.) This recent development will be addressed, however, the context of the imposition of appropriate sanctions.

(citing *Manhattan Indus. Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989). However, the sanctions for civil contempt may not be for purely punitive purposes. *See id.*

Importantly, in selecting contempt sanctions, a court is obliged to use the "least possible power adequate to the end proposed." *Shillitani v. United States*, 384 U.S. 364, 371 (1966)); *see also Cordius Trust v. Kummerfeld Assoc., Inc.*, 658 F. Supp. 2d 512, 524-25 (S.D.N.Y. 2009).

a. **Monetary Sanctions**

i. **Coercive Sanctions**

If fines are coercive in nature, that is, if they are imposed to secure future compliance with court orders, the court has "broad discretion to design a remedy that will bring about [such] compliance." *See Paramedics*, 369 F.3d at 657 (quoting *Perfect Fit Indus. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982)) (internal quotation marks omitted). The Second Circuit has counseled that when imposing penalties for a coercive purpose, the district court should consider several factors including: (1) the character and magnitude of the harm threatened by the party's continued noncompliance; (2) the efficacy of the sanction in brining about compliance; and (3) the contemnor's ability to pay. *See id.* at 658 (citing *Perfect Fit*, 673 F.2d. at 57).

As to the first factor, Lovy's noncompliance has
lasted at least six months and has significantly delayed the
course of discovery.  Indeed, because Lovy allegedly notarized
some of the documents that are at issue in the civil case, both
parties regard him as a key witness and represent that they are
unable to continue discovery without Lovy's compliance with this
Court's Orders and the subpoena.  (*See* USB Mem. at 1-2.)  Lovy's
noncompliance has also forced USB to incur unnecessary and
significant attorney's fees and costs and has resulted in a
virtual halt of settlement discussions.  (*See, e.g.*, ECF No. 93,
USB Letter, dated 3/4/11; USB Mem. at 1-2; ECF No. 82, Leser
Letter to Magistrate Judge Carter, dated 2/4/11 (parties jointly
requesting postponement of settlement conference pending Lovy's
Order to Show Cause hearing and close of discovery).)
Consequently, the threatened harm resulting from Lovy's ongoing
contumacy is actual and significant.

Second, the Court deems the imposition of monetary
sanctions necessary in order to secure Lovy's compliance with
its Orders.  Despite being explicitly warned that his failure to
comply with the subpoena served on him and with this Court's
Orders would result in the imposition of monetary sanctions, to
date, Lovy has not produced the required documents or been
deposed by the parties and did not appear at the March 1, 2011

Show Cause hearing. (*See* 1/27/11 Order; Minute Entry, dated 3/1/11.)

Finally, because a monetary civil contempt order is meant to be compensatory or coercive rather than punitive, a contemnor may be excused from paying monetary sanctions if he or she lacks the financial ability to pay. *See Paramedics*, 369 F.3d at 658; *see also Dell Inc. v. Compudirect, Inc.*, 316 Fed. Appx. 32, 34 (2d Cir. 2009) (citing *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995)). The contemnor has the burden of raising this defense and must establish an inability to pay "clearly, plainly, and unmistakably." *See Compudirect,* 316 Fed. Appx. at 34 (quoting *Huber*, 51 F.3d at 10) (internal quotation marks omitted). Here, Lovy has failed to raise this defense.

Accordingly, the Court imposes a monetary sanction of $500 a day for each day of Lovy's continued contumacy starting on March 26, 2011. *See Tamraz*, 2006 WL 1643202, at *5 (imposing a monetary sanction of $500 in a civil contempt case where defendant failed to comply with the court's order). The penalty of $500 per diem is a coercive measure imposed in order to obtain Lovy's compliance with the subpoena and this Court's Orders. USB, however, has requested that the imposition of monetary sanctions be stayed pending Lovy's compliance with the subpoena; specifically, Lovy's production of documents, if any,

by March 18, 2011, and appearance and testimony at a deposition by March 25, 2011. Consequently, unless Lovy fully purges his contempt by close of business March 25, 2011, the per diem sanction of $500 shall begin on March 26, 2011 and shall continue until Lovy fully purges his contempt. Lovy shall deposit these funds with the Clerk of United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York, 11201, and the funds will be held by the Clerk of the Court in interest until further Order of the Court. As will be discussed, *supra*, the deposited funds shall be applied against the amount the Court awards for compensation to USB for the attorney's fees and costs it expended in attempting to procure Lovy's compliance with the Rule 45 subpoena.

Further, if Lovy does not fully purge his contempt by April 4, 2011, including payment of all monetary sanctions, USB shall advise the Court by April 5, 2011 and, in addition to the continuing $500 per diem monetary sanction, the Court will issue an Order directing the United States Marshal to bring Lovy before the Court for incarceration. The incarceration and per diem monetary sanctions shall both continue until such time as Lovy purges his contempt.

### ii. Compensatory Sanctions

It is possible for a monetary sanction to be both compensatory and coercive in nature. *See Paramedics*, 369 F.3d at 658 (citing *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989)). However, the compensatory goal of civil contempt sanctions "can only be met by awarding to the [aggrieved party] any proven damages." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996). In either case, the district court may award appropriate attorney fees and costs to a victim of contempt. *Id.*

When deciding whether to award fees and costs to the sufferer of the contemnor's conduct, courts have focused on the willfulness of the contemnor's misconduct. *See id.* Although willfulness is "not necessarily . . . a prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting them." *See id.* In order to establish willful contempt, it must be shown that the "contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." *Leadsinger*, 2006 WL 2266312, at *18 (quoting *New York State Nat'l Org. for Women v. Terry*, 952 F. Supp. 1033, 1043 (S.D.N.Y. 1997), *aff'd*, 159 F.3d 86 (2d Cir. 1998) (internal quotation marks omitted).

Here, the Court finds that Lovy has willfully and
intentionally flouted this Court's Orders and accordingly awards
attorney's fees and costs to USB.  As noted above, Lovy had
actual notice of the Court's Orders and what was required of
him, but never attempted to comply with the Orders, sought to
have the Orders modified, or contacted the Court or USB at any
point.  To the contrary, since early 2010, Lovy has been
actively evading service of process and defying Court Orders.
For example, when Lovy was personally served with a subpoena on
August 6, 2010, he threw the papers to the floor and drove away
in his vehicle.[17]  (*See* ECF No. 58-1, Aff. of Service.)  As a
result of this type of purposeful evasion, USB has attempted to
serve Lovy with a subpoena over 45 times since September 2010.
(*See* ECF No. 89, Timeline of Service on Lovy at 1.)  The proof
of Lovy's willful noncompliance is thus clear and convincing.

The Second Circuit mandates that where fines are
imposed in order to compensate the party attempting to
effectuate service for monetary losses resulting from
noncompliance, the fine should correspond to the amount of
damages the party has incurred, and proof of loss is required as
to the compensatory portion of the penalty.  *See Paramedics*, 369
F.3d at 658 (citing *Allied Vision*, 65 F.3d at 1062).  The party

---

[17]  As previously noted, this service was not effective because Lovy was
served with a stale subpoena dated October 16, 2009 and with return dates
November 16, and 25, 2009.  (Minute Entry, dated 8/25/11.)

seeking damages has the burden of proof as to those damages. *Cordius* 658 F. Supp. 2d at 524. Further, the "reasonableness and necessity of the hours spent must be established." *See id.* (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir. 1983)); *see also Leadsinger,* 2006 WL 2266312, at *16 ("[A] claim for actual damages must be established by competent evidence and the amount must not be arrived at by mere speculation.") (quoting *In re Walmar Screen Printing Co.,* 184 F. Supp. 858, 861 (E.D.N.Y. 1960).

According to USB's submissions, as of September 7, 2010,[18] USB has expended $35,550.51 in its attempts to serve Lovy and to obtain Lovy's compliance with this Court's Orders.[19] (*See* ECF No. 93, USB Letter, dated 3/4/11; *see also* ECF No. 93-1, Aff. of Michael DiCanio, dated 3/4/11; ECF No. 93-2 to 93-7, Reed Smith Contemporaneous Time Sheets.) This amount includes legal fees, costs for process servers, and various UPS mailing fees. (*See id.*)

---

[18] The Court found, and the parties agreed, that even though Lovy's noncompliance with Court orders has dated back to February 26, 2010, the compensatory portion of the penalty should only be calculated starting from September 7, 2010, the date the current subpoena was properly served on Lovy.
[19] USB's counsel provides documentation of the attorney's fees and costs incurred per month, as follows: for September 2010, legal fees totaling $3,494.00, and expenses totaling $2,799.60 (*see* ECF No. 93-2, Ex. A); for October 2010, legal fees totaling $5,312.20 (*see* ECF No. 93-3, Ex. B); for November 2010, legal fee totaling $1,080.20 (*see* ECF No. 93-4, Ex. C); for December 2010, legal fees totaling $2,969.00 (*see* ECF No. 93-5, Ex. D); for January 2011, legal fees totaling $14,823.00 and expenses totaling $3,000 (*see* ECF No. 93-6, Ex. E); for the month of February 2011, legal fees totaling $1,711.80 and expenses totaling $360.71. (*See* ECF No. 93-7, Ex. F.) The Court notes that the documentation provided to the Court for the expenses incurred for September 2010 only supports a finding of $1,399.80, not $2,799.60, as listed in the affidavit.

Although USB's submissions include contemporaneous time records of the number of hours worked, the submissions do not include the hourly rates charged by, and the legal experience of, the associates and partners on this case. Accordingly, this Court cannot determine whether the hourly rates charged by USB's attorneys are reasonable based on their legal experience.  Furthermore, as noted, the documentation provided to the Court for the expenses incurred for September 2010 only supports a finding of $1,399.80, not $2,799.60, as listed in the affidavit.  The Court accordingly orders USB to provide the hourly rates and legal experience of its attorneys so that the Court may ascertain the reasonableness of the fees to be awarded.  USB shall also provide complete documentation for September 2010, or an affidavit setting forth its revised expenses.

### b. Arrest as a Sanction

A district court has "considerable discretion in determining whether a coercive sanction is necessary and, if so, the form it will take."  *Leadsinger*, 2006 WL 2266312, at *21. Arrest is an appropriate sanction for civil contempt as long as the confinement is conditioned upon compliance.  *Id.; see also Tamraz,* 2006 WL 1643202, at *3 (citing *Hicks v. Feiock,* 485 U.S. 624, 631-34 (1988)); *Musalli Factory for Gold & Jewelry Co. v. New York Fin. LLC*, No. 06-CV-82, 2010 WL 2382415, at *3

(S.D.N.Y. June 14, 2010) (citing *Tamraz*, 2006 WL 1643202, at *3); *Cordius*, 658 F. Supp. 2d at 525. The Court has warned Lovy that his failure to appear at the March 1, 2011 Show Cause hearing and refusal to purge his contempt could lead to his arrest. (1/27/11 Order.) Specifically, it explained that as a consequence of Lovy's failure to appear, "this Court may issue an order directing the United States Marshal to bring [him] before the court and hold [him] in prison until such time as [he] purge[s] [his] civil contempt by complying with the Rule 45 Subpoena by providing the requested documents and appearing for and providing testimony at a deposition and, if ordered, compensate USB for damages resulting from [his] noncompliance." (*Id.*) Thus, Lovy clearly had notice of the arrest sanction and yet continuously refused to abide by this Court's Orders. However, because the Second Circuit mandates that the district courts use the least possible sanction necessary to ensure compliance, the Court will refrain, at the current time, from granting USB's request for an order of arrest.

Lovy is ordered to produce documents on or before March 18, 2011, and appear and testify at a deposition on or before March 25, 2011. If Lovy fails to comply fully by close of business on March 25, 2011, Lovy must commence paying a monetary sanction of $500 per day on March 26, 2011 until he fully complies with Court Orders.

If, by April 4, 2011, Lovy continues in his failure to comply with this Court's Orders, including payment of all monetary sanctions, USB shall advise the Court by April 5, 2011, and, the Court will then have no choice but to find that monetary sanctions alone are insufficient to secure Lovy's compliance. The Court will therefore immediately issue an arrest warrant, directing the United States Marshal to bring Lovy before the Court. The incarceration and per diem monetary sanction shall both continue until such time as Lovy purges his contempt by complying with this Court's Orders and paying all monetary sanctions imposed by the Court.

## CONCLUSION

Mr. Robert Lovy is held in civil contempt of court. The Court imposes coercive monetary sanctions on Lovy in the amount of $500 per day, which shall begin to accrue on March 26, 2011, unless Lovy fully purges his contempt by producing documents on or before March 18, 2011, and appearing and testifying at a deposition on or before March 25, 2011. Further, the Court awards reasonable attorney's fees and costs for Lovy's willful disobedience of this Court's Orders, in an amount to be determined after USB provides supplemental submissions regarding the hourly rates and legal experience of its attorneys and complete documentation for its September 2010 expenses.

Should Lovy fail to purge his contempt by close of business on March 25, 2011, USB shall immediately notify the Court, and the $500 per diem monetary sanctions shall begin to accrue on March 26, 2011 and will continue until Lovy fully purges his contempt. Thereafter, Lovy shall deposit these funds with the Clerk of United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York, 11201, and the funds will be held by the Clerk of the Court in interest until further Order of the Court. The deposited funds shall be applied against the amount the Court awards for compensation to USB for the attorney's fees and costs it expended in attempting to procure Lovy's compliance with the USB subpoena.

If Lovy fails to purge his contempt by April 4, 2011, including payment of all monetary sanctions, USB shall advise the Court by April 5, 2011, and, in addition to the continuing $500 per diem monetary sanction, the Court will issue an Order directing the United States Marshal to bring Lovy before the Court for incarceration. The incarceration and per diem monetary sanction shall both continue until such time as Lovy purges his contempt by complying with this Court's Orders and paying all monetary sanctions imposed by the Court.

USB is directed to serve this Memorandum and Order personally on Lovy's counsel of record and file a certificate of service on the docket.

If Lovy fully complies with the Rule 45 subpoena, USB shall inform the Court forthwith by ECF.

**SO ORDERED.**

Dated:     Brooklyn, New York
           March 18, 2011

                              _____/s/_____
                              **KIYO A. MATSUMOTO**
                              United States District Judge
                              Eastern District of New York