UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
ABRAHAM LESER

                    Plaintiff,

          -against-

U.S. BANK NATIONAL ASSOCIATION,

                    Defendant.
------------------------------------X
U.S. BANK NATIONAL ASSOCIATION,

          Counterclaim Plaintiff,

          v.

ABRAHAM LESER,

          Counterclaim Defendant.
------------------------------------X

**NOT FOR PRINT OR
ELECTRONIC PUBLICATION**

**MEMORANDUM & ORDER**
09-CV-2362 (KAM)(MDG)

**KIYO A. MATSUMOTO, UNITED STATES DISTRICT JUDGE:**

          By Memorandum and Order dated March 18, 2011, this

court held non-party witness Robert Lovy ("Mr. Lovy") in civil

contempt of court for failing to comply with court orders.  (*See*

ECF No. 99, Order Granting Motion for Order to Show Cause, dated

3/18/2011 ("Contempt Order"), at 37.)  The court imposed

coercive monetary sanctions on Mr. Lovy and awarded

defendant/counterclaim plaintiff U.S. Bank National Association

("USB") reasonable attorney's fees and costs, in an amount to be

determined by the court, in order to compensate USB for damages

suffered while attempting to procure Mr. Lovy's compliance with

the court's orders.  (*Id.*)  Presently before the court is USB's

application for attorney's fees and costs.  As described more fully below, USB is awarded $13,711.50 in attorney's fees and $1,680.36 in costs.

**BACKGROUND**

## I.   Underlying Action and Civil Contempt Motion

The relevant factual and procedural history of this case is set forth in full in the court's March 18, 2011 Memorandum and Order and will not be repeated herein.  As relevant to the instant application, on March 18, 2011, the court held Mr. Lovy in contempt of court for his failure to comply with the court's November 12, 2010 Order that he comply with USB's subpoena seeking documents and testimony, served on Mr. Lovy on September 7, 2010, as well as the court's January 27, 2011 Order to Show Cause, served on Mr. Lovy on January 31, 2011.[1]  (*See* ECF No. 99, Contempt Order at 1, 27, 37.)

---

[1] Pursuant to Federal Rule of Civil Procedure 45(e), an "issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena."  Fed. R. Civ. P. 45(e); *see Beare v. Millington*, No. 07-CV-3391, 2010 U.S. Dist. LEXIS 2501, at *7 (E.D.N.Y. Jan. 13, 2010) (stating that unless the subpoena is improperly issued or the non-party has an adequate excuse, failure to comply with a subpoena made under Rule 45 may be deemed contempt of court) (citing Fed. R. Civ. P. 45(e)). Further, under Federal Rule of Civil Procedure 37(b)(1), a deponent may be sanctioned for failure to comply with a court order.  Fed. R. Civ. P. 37(b)(1) ("If the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court.")  Moreover, under 18 U.S.C. § 401(3), the court is empowered to enforce compliance with its orders through civil contempt.  18 U.S.C. § 401(3) ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command.").  "Indeed, the judicial power to hold a non-party who has failed to obey a valid subpoena in contempt is the primary mechanism by which a court can enforce a subpoena."

Specifically, the court found that (1) the court's Order was clear and unambiguous; (2) the evidence of Mr. Lovy's noncompliance was clear and convincing; and (3) Mr. Lovy did not diligently attempt to comply with the court's Order in a reasonable manner. (*See id.* at 22, 25, 26, 27.) *See also Paramedics Electromedicina Commercial, Ltd. v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004).

The court imposed on Mr. Lovy (1) a coercive sanction of $500 per day to begin on March 26, 2011, unless Mr. Lovy fully purged his contempt by producing documents on or before March 18, 2011, and appeared and testified at a deposition on or before March 25, 2011; and (2) a compensatory sanction of attorney's fees and costs payable to USB, in an amount to be determined, in order to compensate USB for damages suffered while attempting to procure Mr. Lovy's compliance with its September 7, 2010 subpoena and with the court's January 27, 2011 Order to Show Cause. (ECF No. 99, Contempt Order at 1, 27, 37.) The court directed USB to submit further documentation so the appropriate amount of fees and costs could be determined.[2] (*Id.* at 37.)

---

*Beare*, 2010 U.S. Dist. LEXIS 2501, at *7 (citing David D. Siegel, Fed. R. Civ. P. 45, Practice Commentaries, C45-26).

[2] By letter dated March 4, 2011, USB submitted an estimate of damages arising from USB's efforts to obtain and enforce Lovy's compliance with USB's subpoena and the court's orders. (*See* ECF No. 93, Letter by USB, dated 3/4/2011.) In total, USB sought $35,550.51 in damages purportedly incurred since September 7, 2010, including legal fees by attorneys Steven Cooper,

On April 12, 2011, USB confirmed that Mr. Lovy had produced documents responsive to the subpoena and had appeared for his deposition. (ECF No. 102, Letter by USB, dated 4/12/2011 ("USB 4/12/2011 Ltr."), at 1.) USB also provided information regarding the hourly rates and experience of its counsel. (*Id.* at 2.) Further, USB withdrew its claim for $2,799.60 in expenses from September 2010. (*Id.*)

By letter dated April 13, 2011, counsel for Mr. Lovy stated that Mr. Lovy was in a "dire financial predicament" and asked the court not to impose a monetary sanction that Mr. Lovy would be unable to satisfy. (ECF No. 103, Letter in Response to Letter from Counsel for USB, dated 4/13/2011 ("Lovy 4/13/2011 Ltr.") at 2.)

On June 15, 2011, USB's counsel responded to Mr. Lovy's claim of poverty and submitted a revised application for attorney's fees and costs. (*See* ECF No. 113, Letter by USB, dated 6/15/2011 ("USB 6/15/2011 Ltr."); ECF No. 114, Affidavit of Michael DiCanio, dated 6/15/2011 ("DiCanio Aff.").)

---

Esq., Harry Rimm, Esq., and Michael DiCanio, Esq., and costs of process servers and UPS mailing fees. (*Id.*) That submission, however, was inadequate in that (i) numerous entries contained both redacted and unredacted tasks and a single notation of time expended, suggesting that USB may have included in its total amount of requested attorney's fees time expended on tasks not associated with procuring Lovy's compliance and a finding of civil contempt; (ii) it failed to particularize the requested fees by attorney and by year; and (iii) it failed to include biographies of the attorneys to justify the respective rates charged in light of the prevailing rates in the Eastern District of New York. (*See id.; see also* Order dated 4/28/2011.)

On June 24, 2011, Mr. Lovy's counsel provided additional support for his argument that Mr. Lovy would be unable to satisfy any significant monetary sanctions imposed by the court. (*See* ECF No. 117, Letter in Response to June 15, 2011 Letter by USB, dated 6/24/2011 ("Lovy 6/24/2011 Ltr.").)

## DISCUSSION

### A.   Reasonable Attorney's Fees and Costs

USB seeks attorney's fees and costs in the amount of $24,840.28 and $3,360.71, respectively, for the time and money spent between September 2010 and February 2011 attempting to secure Mr. Lovy's compliance with the court's orders. These amounts are modified as set forth below.

The compensatory goal of civil contempt sanctions "can only be met by awarding to the [aggrieved party] any proven damages." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996). The Second Circuit mandates that where sanctions are imposed in order to compensate the party attempting to effectuate service for monetary losses resulting from noncompliance, the fine should correspond to the amount of damages the party has incurred, and proof of loss is required as to the compensatory portion of the penalty. *See Paramedics*, 369 F.3d at 658 (citations omitted). The party seeking damages has the burden of proof as to the amount of those damages. *Cordius Trust v. Kummerfeld Assocs.*, 658 F. Supp. 2d 512, 524 (S.D.N.Y. 2009).

Further, the "reasonableness and necessity of the hours spent must be established." *Id.* (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir. 1983)); *see also Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606, 2006 U.S. Dist. LEXIS 55550, at *48-49 (S.D.N.Y. Aug. 4, 2006) ("[A] claim of actual damages must be established by competent evidence and the amount must not be arrived at by mere speculation or conjecture.") (quoting *In re Walmar Screen Printing Co.*, 184 F. Supp. 858, 861 (E.D.N.Y. 1960)).  The Second Circuit has held that courts awarding attorney's fees are to award the "presumptively reasonable fee," which is determined by multiplying the reasonable hourly rate by the number of reasonably expended hours.  *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 289 (2d Cir. 2011).

### a. Reasonable Hourly Rate

A reasonable hourly rate is "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Id.* (quoting *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks omitted)).  In calculating the presumptively reasonable fee, "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons*, 575 F.3d at 174 (citation and internal quotation marks omitted).  In

addition, courts should consider the following case-specific factors in determining the reasonable hourly rate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 493 F.3d 110, 112, 114 n.3 (2d Cir. 2007), *amended on other grounds*, 522 F.3d 182 (2d Cir. 2008) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)).

In the Eastern District of New York, hourly rates range from approximately $300 to 400 per hour for partners, $200 to $300 per hour for senior associates, and $100 to $200 per hour for junior associates. *See Konits v. Karahalis*, 409 F. App'x 418, 422 (2d Cir. 2011) (affirming district court decision holding that prevailing rates for experienced attorneys in the

Eastern District of New York range from approximately $300 to $400 per hour); *Pilitz v. Inc. Vill. of Freeport*, No. 07-CV-4078, 2011 U.S. Dist. LEXIS 132666, at *14 (E.D.N.Y. Nov. 17, 2011) (noting hourly rates of $300-$450 for partners, $200-$300 for senior associates, and $100-$200 for junior associates); *Local 282, Int'l Bhd. of Teamsters v. Pile Found. Constr. Co.*, No. 09-cv-4535, 2011 U.S. Dist. LEXIS 86644, at *33 (E.D.N.Y. Aug. 5, 2011) (noting that "[r]ecent prevailing hourly rates in the Eastern District" are $200-$400 for partners and $100-$295 for associates) (quoting *Szczepanek v. Dabek*, No. 10-CV-2459, 2011 U.S. Dist. LEXIS 23458, at *22 (E.D.N.Y. Mar. 7, 2011)); *Crapanzano v. Nations Recovery Ctr., Inc.*, No. 11-CV-1008, 2011 U.S. Dist. LEXIS 76759, at *4 (E.D.N.Y. June 29, 2011) (noting hourly rates of $200-$350 for partners, $200-$250 for senior associates with four or more years of experience, and $100-$150 for junior associates with one to three years of experience), *adopted by* 2011 U.S. Dist. LEXIS 76665 (E.D.N.Y. July 14, 2011); *Gutman v. Klein*, No. 03-CV-1570, 2009 U.S. Dist. LEXIS 123057, at *8 (E.D.N.Y. Oct. 9, 2009) (approving hourly rates of $300-$400 for partners, $200-$300 for senior associates, and $100-$200 for junior associates).

USB's request for an award of $24,840.28 in attorney's fees[3] is based on the following hourly rates:

| Attorney | Hourly Rate 2010 | Hourly Rate 2011 |
|---|---|---|
| Steven Cooper, Esq. | $670 | $700 |
| Harry Rimm, Esq. | $520 | $545[4] |
| Michael DiCanio, Esq. | $380 | $440 |

(ECF No. 114-5, DiCanio Aff. Ex. D ("Summary of Fees").)  The court finds that, in light of the attorneys' experience and other case-specific factors as articulated by the Second Circuit in *Arbor Hill*, the requested hourly rates are not reasonable in this district.

Steven Cooper is a partner in the commercial litigation group at Reed Smith LLP ("Reed Smith").  He is admitted to the bar in New York, and he has more than 28 years of experience as a commercial litigator.  (*See* ECF No. 114-6, DiCanio Aff. Ex. E at 5; ECF No. 102, USB 4/12/2011 Ltr. at 2.) Prior to joining Reed Smith, Mr. Cooper was the chair of the commercial litigation group at Anderson Kill & Olick, P.C. ("Anderson Kill"), and he also previously worked for the Senate Judiciary Committee and the U.S. Copyright Office.  (*See* ECF No.

---

[3] The $24,840.28 in requested fees is broken down into $10,126.80 for work performed by Mr. Cooper, $4,629.08 for work performed by Mr. Rimm, and $10,084.40 performed by Mr. DiCanio.  (*See* ECF No. 114-5, DiCanio Aff. Ex. D at 2.)

[4] In a letter to the court dated April 12, 2011, USB's counsel represented that Mr. Rimm's hourly rate in 2011 was $540, not $545.  (*See* ECF No. 102, USB 4/12/2011 Ltr. at 2.)

114-6, DiCanio Aff. Ex. E at 4.) Mr. Cooper's biography on Reed Smith's website details his substantial experience in complex commercial litigation, as well as his numerous publications and presentations. (*Id.*) Despite Mr. Cooper's impressive resume, the court finds that an hourly rate of $670-700 for his services in this case is not reasonable. As noted above, courts in the Eastern District of New York have regularly awarded experienced attorneys hourly rates ranging from $300 to $400. *See, e.g.*, *Expeditors Int'l of Wash., Inc. v. Rubie's Costume Co., Inc.*, No. 03-CV-3333, 2007 U.S. Dist. LEXIS 7692, at *6 (E.D.N.Y. Feb. 2, 2007) (finding that although counsel's requested hourly rate of $340 to $370 was "on the high side," it was reasonable given his 25 years of litigation experience and complete success on his client's claims at trial). Further, the work required to secure Mr. Lovy's compliance with the court's orders was not particularly novel or complex. Based on the prevailing rates in this district, and in light of Mr. Cooper's experience and the facts and circumstances in this case, the court finds that a reasonable hourly rate in this case for Mr. Cooper is $350.

Harry H. Rimm, Esq. is counsel in the commercial litigation group at Reed Smith. (*See* ECF No. 114-6, DiCanio Aff. Ex. E at 6.)[5] He is admitted to practice in New York, New

---

[5] In a letter to the court dated April 12, 2011, Mr. DiCanio represented that Mr. Rimm was a partner at Reed Smith, not counsel. (*See* ECF No. 102, USB 4/12/2011 Ltr. at 2.)

Jersey, and California, and has been practicing law for more than 18 years. (*See id.* at 7; ECF No. 102, USB 4/12/2011 Ltr. at 2.) Prior to joining Reed Smith, Mr. Rimm worked at Anderson Kill and also as an Assistant United States Attorney, where he led criminal investigations, conducted trials, and pursued appeals. (*See* ECF No. 114-6, DiCanio Aff. Ex. E at 6.) Mr. Rimm's experience in complex civil litigation appears to be more recent. The court finds that in light of Mr. Rimm's experience, as well as the facts and circumstances of this case, a reasonable hourly rate for Mr. Rimm is $300. *See Larsen v. JBC Legal Grp., P.C.*, 588 F. Supp. 2d 360, 364 (E.D.N.Y. 2008) (awarding counsel with 17 years of experience an hourly rate of $300).

Michael N. DiCanio, Esq. is an associate at Reed Smith with five years of experience as a commercial litigator. (*See* ECF No. 114-6, DiCanio Aff. Ex. E at 8; ECF No. 102, USB 4/12/2011 Ltr. at 2.) Accordingly, the court finds that $250 per hour is a reasonable rate for Mr. DiCanio. *See Pilitz*, 2011 U.S. Dist. LEXIS 132666, at *14 (noting that a reasonable hourly rate for senior associates is $200-$300); *Gutman*, 2009 U.S. Dist. LEXIS 123057, at *8 (same); *Crapanzano*, 2011 U.S. Dist. LEXIS 76759, at *4 (noting that a reasonable hourly rate for senior associates with four or more years of experience is $200-$250). The court has reviewed the factors in *Arbor Hill*, and

finds that the foregoing rates are reasonable and that a paying client in the Eastern District of New York would be willing to pay the foregoing rates in a similar case.

**b. Hours Reasonably Expended**

The burden is on the party moving for attorney's fees to justify the amount sought by providing contemporaneous time records describing, with specificity, for each attorney, the nature of the work done, the hours expended, and the dates on which the work was performed. *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F. Supp. 2d 200, 211 (E.D.N.Y. 2009) (citing *Carey,* 711 F.2d at 1154). In determining the presumptively reasonable fee, a court should adjust the hours actually billed to a number the court determines to have been reasonably expended. *See Konits*, 409 F. App'x at 421. The number of hours claimed must be "supported by time records [and not be] excessive or duplicative." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 756, 764 (2d Cir. 1998); *see also Hensley v. Eckert*, 461 U.S. 424, 434 (1983) (directing district courts to exclude hours not "reasonably expended"). In adjusting the number of hours, the court "must state its reasons for doing so as specifically as possible." *LeBlanc-Sternberg*, 143 F.3d at 764 (citation omitted).

Here, at the court's request, USB's counsel submitted an affidavit and invoices containing contemporaneous time

12

records in support of its application for $24,840.28 in attorney's fees and $3,360.71 in costs. (*See* ECF No. 114-4, DiCanio Aff. Ex. C.)

The court notes that the majority of the entries in the invoices are lumped together with other tasks. Such block billing – the "lumping together of discrete tasks" – "makes it difficult for the court to allocate time to individual activities in order to gauge the reasonableness of time expended on each activity." *Penberg v. Healthbridge Mgmt.*, No. 08-CV-1534, 2011 U.S. Dist. LEXIS 31022, at *29 (E.D.N.Y. Mar. 22, 2011) (citation omitted). Generally, when billing records reveal repeated use of block billing, "courts have used percentage reductions 'as a practical means of trimming fat from a fee application.'" *Penberg*, 2011 U.S. Dist. LEXIS 31022, at *29 (quoting *Carey*, 711 F.2d at 1146).

In this case, however, USB's counsel has undertaken in good faith to break down each time entry to determine the portion of the entry and the amount of time spent specifically pursuing Mr. Lovy's compliance. USB's counsel proceeded by counting the number of tasks in each entry associated with Mr. Lovy, dividing it by the number of tasks listed in that entry, and multiplying that fraction by the time associated with that entry. (*See* ECF No. 113, USB 6/15/2011 Ltr. at 3 n.2.) Upon review, the court finds that this tailored method of assessing

the time spent on Lovy-related tasks is reasonable, and the
court accepts as reasonable the time as reported.

Accordingly, incorporating the adjustments discussed
above, the court awards USB attorney's fees in the amount of
$13,711.50, calculated as follows:

| Attorney | Adjusted Rate | Lovy Hours Billed (2010) | Lovy Hours Billed (2011)[6] | Total Adjusted Fee |
|---|---|---|---|---|
| Cooper | $350 | 8.8 | 6.62<br><br>(5.96 after 10% discount) | $5,166.00 |
| Rimm | $300 | 4.78 | 4.37<br><br>(3.93 after 10% discount) | $2,613.00 |
| DiCanio | $250 | 6.9 | 18.70<br><br>(16.83 after 10% discount) | $5,932.50 |

**c. Reasonable Costs**

USB also submitted invoices and other documentation in
support of its request for $3,360.71 in costs. (*See* ECF No.
114-7, DiCanio Aff. Ex. F.) USB seeks reimbursement for
$3,250.00 in expedited service fees paid to Serving by Irving,
Inc. for numerous attempts at serving documents on Mr. Lovy.
(*See id.* at 3-8.) Two of the invoices indicate that the service

---

[6] Counsel for USB also applied a ten percent "2011 discount" to all time
billed in 2011, except for Mr. Cooper's February 4, 2011 invoice for
"review[ing] and revis[ing] Lovy letter and affidavit of service to court"
and Mr. DiCanio's February 8, 2011 invoice for "draft[ing] affidavit of
service regarding Lovy; organizing service on Lovy regarding recent order."
(ECF No. 114-3, DiCanio Aff. Ex. B at 2-3; *see also* ECF No. 114, DiCanio Aff
¶ 3; ECF No. 102, USB 4/12/2011 Ltr. at 2 n.3.)  For consistency, the court
has applied the 2011 discount to these fees, as well.

also included surveillance of Mr. Lovy's residence. (*See id.* at 3, 5.) In addition, counsel seeks reimbursement for $110.71 paid to UPS for sending documents to Mr. Lovy by courier. (*See id.* at 9.)

Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable. *LeBlanc-Sternberg*, 143 F.3d at 763. Further, costs are ordinarily recoverable if they are "incidental and necessary to the litigation." *Tips Exps., Inc. v. Music Mahal, Inc.*, No. 01-CV-5412, 2007 U.S. Dist. LEXIS 84399, at *29-30 (E.D.N.Y. Mar. 9, 2007) (citation and internal quotation marks omitted). As a general matter, "the cost of a private process server is taxable if that cost does not exceed the amount that the U.S. Marshals would have charged for the service." *Settlement Funding v. AXA Equitable Life Ins. Co.*, No. 09-CV-8685, 2011 U.S. Dist. LEXIS 77410, at *8 (S.D.N.Y. July 18, 2011) (quoting *Morales v. Smith*, No. 94 Civ. 4865, 1998 U.S. Dist. LEXIS 9546, at *4-5 (S.D.N.Y June 26, 1998)). *See, e.g.*, *Abbott v. Law Offices of Forster & Garbus*, No. 10-CV-6066, 2010 U.S. Dist. LEXIS 122967, at *5 (W.D.N.Y. Nov. 19, 2010) (approving $55.00 service fee); *Zhao v. East Harlem Laundromat, Inc.*, No. 07 Civ. 0201, 2010 U.S. Dist. LEXIS 121335, at *56 (S.D.N.Y. Oct. 8, 2010) (approving $66.00 service fee); *Burchette v. Abercrombie & Fitch Stores, Inc.*, No. 08 Civ. 8786, 2010 U.S. Dist. LEXIS 99551, at *19 (S.D.N.Y.

Sept. 22, 2010) (approving $75.00 service fee).  However, where
a party encounters significant difficulties in effecting
service, a higher service fee may be appropriate, provided it is
adequately supported by documentation.  *See, e.g.*, *Fin. Life
Servs., LLC v. N. Bergman Ins. Trust*, No. 10-CV-4499, 2011 U.S.
Dist. LEXIS 113643, at *16 (E.D.N.Y. June 27, 2011) (finding
that a "higher than normal" service fee of $461.00 was "within
reason" due to the "difficulties in serving the defendant"),
*adopted in relevant part*, 2011 U.S. Dist. LEXIS 107251, at *20
(E.D.N.Y. Sept. 22, 2011); *Annuity, Pension, Welfare & Training
Funds of Int'l Union of Operating Eng'rs, Local 14-14B, AFL-CIO
v. North Am. Iron Works*, No. 07-CV-2257, 2008 U.S. Dist. LEXIS
114993, at *15 (E.D.N.Y. Oct. 3, 2008) (approving $200 service
fee where the fee was "substantiated by accompanying invoices").

     The court finds that, in light of the specific facts
and circumstances of this case, USB is entitled to reimbursement
for service fees incurred while attempting to effect personal
service on Mr. Lovy, in accordance with this court's orders.
The record clearly reveals that Mr. Lovy repeatedly and
willfully evaded personal service of process by USB, for which
evasion he has been held in civil contempt.

     For example, on December 23, 2010, the court granted
USB leave to move by Order to Show Cause to hold Mr. Lovy in
civil contempt for failing to produce documents or appear at his

deposition. (*See* Order dated 12/23/2010.) The court directed

USB to personally serve Mr. Lovy with, *inter alia*, a copy of

USB's contempt motion papers by January 14, 2011. (*Id.*) In an

effort to comply with the court's Order, between January 10 and

January 17, 2011, USB's process server attempted to serve Mr.

Lovy at least eight times during different times of the day, all

to no avail. (*See* ECF No. 74, Letter by USB, dated 1/18/2011;

ECF No. 74-2, Affidavit of Attempted Service, dated 1/18/2011;

ECF No. 78, Amended Affidavit of Attempted Service, dated

1/24/2011.) This attempted service involved surveillance of Mr.

Lovy's residence in the hope of seeing him arrive or leave home.

(*See* ECF No. 78, Amended Affidavit of Attempted Service, dated

1/24/2011.)

Similarly, in compliance with this court's January 27,

2011 Order that USB personally serve Mr. Lovy with a subsequent

Order to Show Cause (*see* ECF No. 80, Order to Show Cause dated

1/27/11), USB's process server attempted at least five times to

serve Mr. Lovy at his residence between January 31 and February

5, 2011. (*See* ECF No. 83, Letter by USB, dated 2/4/2010; ECF

No. 83-2, Affidavit of Attempted Service, dated 2/4/2011.)

Again, these attempts to serve Mr. Lovy involved surveillance of

his residence, and again, they were fruitless. (*Id.*) Thus, the

record shows that the significant service fees incurred by USB

were the result of the extraordinary difficulty of complying

with the court's orders by effecting personal service on Mr. Lovy, and justifies holding him accountable for those service fees.

However, because USB has provided no information as to the reasonableness of the rates charged for the services performed by Serving by Irving, Inc. or UPS, the court has no way of ascertaining whether such fees are reasonable under the circumstances. Accordingly, the court will apply a 50 percent across-the-board reduction in the service fees requested. Thus, the court awards USB $1,680.36 in costs.

**B.    Lovy's Purported Inability to Pay**

Mr. Lovy asserts that he lacks financial resources and asks the court not to impose a monetary sanction that he will be unable to pay. (*See* ECF No. 103, Lovy 4/13/2011 Ltr.; ECF No. 117, Lovy 6/24/2011 Ltr.)

Because a monetary civil contempt order is meant to be compensatory or coercive, rather than punitive, a contemnor may be excused from paying monetary sanctions if he or she lacks the financial ability to pay. *See Paramedics*, 369 F.3d at 658; *accord Dell Inc. v. Compudirect, Inc.*, 316 F. App'x 32, 34 (2d Cir. 2009) ("[A] party's complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions is a defense to a charge of civil contempt") (quoting *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir.

1995)).  The contemnor has the burden of producing evidence that establishes his inability to pay "clearly, plainly, and unmistakably."  *See Dell,* 316 F. App'x at 34 (quoting *Huber*, 51 F.3d at 10); *accord A.V. By Versace, Inc. v. Gianni Versace, S.p.A.*, 279 F. Supp. 2d 341, 346 (S.D.N.Y. 2003).  Conclusory statements by a contemnor that he is unable to pay are inadequate to satisfy this burden.  *Huber*, 51 F.3d at 10; *accord United States v. Acquest Transit LLC*, No. 09-CV-00055, 2010 U.S. Dist. LEXIS 142538, at *53 (W.D.N.Y. Aug. 9, 2010).

Having reviewed Mr. Lovy's submissions in support of his claim that he is in "dire financial straits," the court finds that Mr. Lovy has not met his burden of proving plainly and unmistakably that he is unable to pay a compensatory sanction.  Mr. Lovy's counsel writes that Mr. Lovy has been unemployed for ten years, he does not own a home or a car, and he has approximately ten judgments outstanding against him. (*See* ECF No. 103, Lovy 4/13/2011 Ltr. at 1; ECF No. 117, Lovy 6/24/2011 Ltr. at 2.)  Mr. Lovy submitted documents showing that his car insurance business closed in 1997 and that, at one point or another, he has owed at least $120,000 in judgments against him.  (*See* ECF No. 117, Lovy 6/24/2011 Ltr. Ex. B, C.)

Mr. Lovy did not, however, submit any tax returns, bank statements, or other documentation demonstrating his current financial situation.  Further, Mr. Lovy's mere assertion

19

of his inability to pay is not persuasive, especially in light
of his lack of reliability in connection with this case, as well
as his present living circumstances. *See S.E.C. v. Margolin*,
No. 92 Civ. 6307, 1996 U.S. Dist. LEXIS 11299, at *8-9 (S.D.N.Y.
Aug. 8, 1996) (finding contemnor's assertion of inability to pay
unpersuasive in light of his lack of credibility, as established
by the facts surrounding the case); *Huber*, 51 F.3d at 10 (noting
that a contemnor's credibility "is to be weighed in the light of
his present circumstances") (quoting *Maggio v. Zeitz*, 333 U.S.
56, 76 (1948)). Indeed, as counsel for USB points out, Mr. Lovy
rents a two family house and has supported himself for the last
ten years without being employed and without public assistance.[7]
(*See* ECF No. 113, USB 6/15/2011 Ltr. at 2; ECF No. 114-2,
DiCanio Aff. Ex. A ("Lovy Dep.") at 10.)

Without further evidence demonstrating his inability
to pay a sanction, Mr. Lovy has failed to satisfy his burden.
*See, e.g.*, *Margolin*, 1996 U.S. Dist. LEXIS 11299, at *9-10
(finding that written submissions, including accountant's report
and bank account information, were inadequate to demonstrate the
contemnor's inability to pay where they failed to provide a

---

[7] During his deposition, Mr. Lovy stated that he leases a Nissan Altima and a
Mercedes. (*See* ECF No. 114-2, Lovy Dep. at 16.) He later explained,
however, that although the Mercedes lease was in his name, it was paid for by
a friend. (*Id.* at 16-19.) Although Mr. Lovy's counsel asserts that the
Nissan Altima is leased by and paid for by Mr. Lovy's adult son, (*see* Lovy
6/24/2011 Ltr. at 2), the court finds no support for this statement in the
deposition transcript, as Mr. Lovy stated only that his son uses the car,
(*see* ECF No. 114-2, Lovy Dep. at 17).

"complete picture of [the contemnor's] financial status"); *A.V.
By Versace*, 279 F. Supp. 2d at 348 (finding that documents
submitted by the contemnor, including unsigned tax returns and
various bank records, were inadequate to demonstrate the
contemnor's inability to pay because they failed to provide the
court with a "full and complete picture of [his] financial
situation").  Accordingly, Mr. Lovy shall be held responsible
for the full amount of the sanction imposed.

## CONCLUSION

For the reasons stated above, the court awards USB attorney's fees in the amount of $13,711.50 and costs in the amount of $1,680.36 for Mr. Lovy's willful disobedience of this court's orders.

USB is directed to serve this Memorandum and Order personally on Mr. Lovy's counsel of record and file a certificate of service on the docket by February 22, 2012.

**SO ORDERED.**

Dated:     Brooklyn, New York
           February 21, 2012

                        _____/s/_____
                        **KIYO A. MATSUMOTO**
                        United States District Judge
                        Eastern District of New York