UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
ABRAHAM LESER

      Plaintiff,                           **MEMORANDUM AND ORDER**

      -against-                      09-CV-2362 (KAM)(MDG)

U.S. BANK NATIONAL ASSOCIATION,

      Defendant.
--------------------------------------X
U.S. BANK NATIONAL ASSOCIATION,

      Counterclaim/Plaintiff,

      -against-

ABRAHAM LESER,

      Counterclaim/Defendant.
--------------------------------------X

**MATSUMOTO, United States District Judge:**

      On June 4, 2009, plaintiff/counterclaim defendant

Abraham Leser ("Leser") commenced this action for declaratory

judgment that certain personal guaranties for two real estate

loan development projects are not enforceable against him. (ECF

No. 1, Complaint.) Defendant/counterclaim plaintiff U.S. Bank

National Association ("USB") counterclaimed, alleging two claims

for breach of contract and one claim of unjust enrichment

against Leser based on the same development projects. (ECF No.

11, Answer and Counterclaim.) On January 14, 2013, after an

eight-day trial, a jury returned a verdict in favor of USB in

the amount of $38,289,575.66, finding Leser liable for breach of two personal guaranties (the "Guaranties") executed in connection with two real estate development loans known as the "Philadelphia Loan" and the "Seattle Loan."[1]  (*See* ECF No. 189, Jury Verdict.)  Because the parties intended to submit post-trial briefing regarding the amount of interest, attorney's fees, and costs (*see* ECF Nos. 199-201; Order dated 1/31/13 (extending briefing schedule)), judgment was not entered in this case immediately after trial and the jury's verdict.  The court notes that, pursuant to Federal Rule of Procedure 58(e), ordinarily the entry of judgment may not be delayed in order to tax costs or award fees, however, the parties agreed that all submissions, including the amount of interest due, would be fully submitted by March 18, 2013.  (*See* Order dated 1/31/13.)

On January 28, 2013, USB submitted its initial motion for interest, attorneys' fees, and costs (ECF No. 196, USB's Memorandum of Law in Support of Motion ("Mem.")), as well as the supporting affidavit of Steven Cooper, Esq., USB's lead counsel from the firm of Reed Smith, dated January 28, 2013 (ECF No. 197, Affidavit of Steven Cooper, Esq. ("Cooper 1/28/13 Aff.")), and the affidavit of Gregg Gehrke, USB's vice president, dated

---

[1] Unless otherwise indicated, all capitalized terms in the instant Memorandum and Order have the same meaning as those in the court's Memorandum and Order denying the parties' cross-motions for summary judgment, dated September 25, 2012.  (ECF No. 142, Order Denying Cross-Motions for Summary Judgment, dated 9/25/12.)

January 28, 2013 (ECF No. 198 ("Gehrke 1/28/13 Aff.")).  With the court's permission, USB also submitted a first supplemental affidavit from Mr. Cooper, dated February 8, 2013 (ECF No. 202, Supplemental Affidavit of Steven Cooper, Esq. ("Cooper 2/8/13 Aff.")) and a first supplemental affidavit from Mr. Gehrke, also dated February 8, 2013 (ECF No. 203, Supplemental Affidavit of Gregg Gehrke ("Gehrke 2/8/13 Aff.")).

On March 8, 2013, Leser timely submitted a memorandum in opposition to USB's motion for interest, attorneys' fees, and costs.  (ECF No. 216, Leser's Memorandum in Opposition to USB's Motion ("Opp.").)

On March 18, 2013, USB filed a reply memorandum (ECF No. 217, USB's Reply Memorandum ("Reply")), and a second supplemental affidavit from Mr. Cooper, dated March 18, 2013 (ECF No. 219, Second Supplemental Affidavit of Steven Cooper, Esq. ("Cooper 3/18/13 Aff.")), and a second supplemental affidavit from Mr. Gehrke, dated March 18, 2013 (ECF No. 218, Second Supplemental Affidavit of Gregg Gehrke ("Gehrke 3/18/13 Aff.")).

Pursuant to the court's order dated May 1, 2013, USB also filed a letter on May 3, 2013 setting forth USB's updated amounts for the principal and interest due on both loans as well as the amount of a recent advance to the receiver for the Seattle Property (ECF No. 226, USB's Letter dated 5/3/13), and a

third supplemental affidavit of Gregg Gehrke in support (ECF No. 227, Third Supplemental Affidavit of Gregg Gehrke dated 5/3/13 ("Gehrke 5/3/13 Aff.")). Leser filed a letter in response to USB's May 3, 2010 submission later that same day. (ECF No. 228, Leser's Letter dated 5/3/13.)

Lastly, pursuant to the court's order dated May 9, 2013, USB also filed a letter with the court on May 10, 2013, providing the updated amounts for the principal and interest due on both loans without the addition of the advance to the Seattle receiver. (ECF No. 299, USB's Letter dated 5/10/13 ("Updated Interest Ltr.").)

In support of its motion, USB argues that it is entitled to pre- and post-judgment interest, fees, and costs based on the personal Guaranties Leser executed in relation to the Philadelphia and Seattle Loans. (*See* Mem. at 1.) Each Guaranty at issue provides that Leser "unconditionally guarantees and becomes surety for the full and timely payment, whether by declaration, acceleration or otherwise, by Borrower of all principal, interest, and all fees and costs of [USB] now or hereafter to be paid by Borrower pursuant to the documents and instruments that evidence and secure the Loan, including without limitation, the Note ('the Loan Documents')." (Def. Trial Exhibits X4 and Y4 (Philadelphia Guaranty), at 1; Def. Trial Exhibits T8, U8 and V8 (Seattle Guaranty), at 1.) USB

contends that the loan agreement documents executed in connection with each loan (the "Philadelphia Loan Agreement" and the "Seattle Loan Agreement," respectively) provide for various types of interest amounts: "loan" interest, default interest, a per diem interest amount, and late charges. (Mem. at 1-4.) As of May 10, 2013, USB's calculation of the Loans' respective principal plus requested interest was $23,435,780.94 for the Philadelphia Loan, and $27,582,192.77 for the Seattle Loan.[2] (Updated Interest Ltr. at 1-2.)

The jury also determined that USB is entitled to attorneys' fees. (*See* ECF No. 189, Jury Verdict.) USB thus requests attorneys' fees in the total amount of $3,471,418.65 for services rendered by Reed Smith. (Reply at 10 (reflecting total amount of legal fees and costs sought by USB for services rendered through March 18, 2013).) The contemporaneous time records supporting USB's fee request for Reed Smith's attorneys are attached to Mr. Cooper's Affidavits dated January 28, 2013, February 8, 2013, and March 18, 2013. (*See* Cooper 1/28/13, Ex. B; Cooper 2/8/13 Aff., Ex. B; and Cooper 3/18/13 Aff., Ex. B.) USB also requests attorneys' fees and costs in connection with the Seattle Loan foreclosure proceeding in the amount of

---

[2] Because the loan interest, default interest and per diem interest amounts must be calculated with reference to LIBOR, a set interest rate which varies month-to-month, USB has had to continuously update its requested interest amounts to reflect the changing LIBOR rate. (*See generally* Mem. and Reply.)

$8,560.80, for services rendered by the firm of Miller Nash LLP. (Cooper 2/8/13 Aff. ¶ 11.)

Leser's principal challenge to USB's request for interest is that USB "does not adequately explain its calculation of interest." (Opp. at 2-4.) Additionally, according to Leser, the Guaranties at issue only obligate him to pay the "principal, interest and all fees and costs of the Bank," which should not be interpreted to include USB's requested "late charges." (*Id*. at 4.) Instead, Leser asks the court to view USB's requested late charges "in essence, as liquidated damages," which are not appropriate in this case because the amount of *actual* damages suffered by USB has been calculated. (*Id*. (citing *Truck Rent-A-Center, Inc. v. Putnam Farms 2nd Inc.*, 41 N.Y.2d 420, 423-24 (1977).)

Leser also argues that USB's application for attorneys' fees should be denied because (1) USB did not attach a retainer agreement to its motion, as purportedly required by New York law (*id*. at 5-6); (2) it is unclear what USB actually paid to its counsel (*id*. at 6-7); (3) USB failed to provide sufficient information to satisfy the *Johnson* factors for the court to determine a reasonable hourly rate (*id*. at 7-10); (4) USB's motion seeks fees for its "missteps," such as USB's unsuccessful motions for summary judgment, a motion to compel, and USB's efforts to serve non-party Robert Lovy with a subpoena

in 2010 (*id*. at 10-13); (5) USB seeks fees for overstaffed work (*id*. at 13-14); (6) USB seeks fees for billed work whose descriptions contain "critical words" that are redacted (*id*. at 14-15); and (7) USB's overall failure to carry its burden to demonstrate its entitlement to fees because it used block billing and "unilaterally" redacted certain work descriptions, after unsuccessfully asking the court for permission to file its application under seal (*id*. at 15-16). Leser further argues that USB has failed to provide adequate documentation or "back-up" for its requested expenses, such as transcript costs and courier services. (*Id*. at 16.)

Lastly, Leser contends that granting USB's motion would result in USB enjoying an improper "double-dip" recovery. (*Id*. at 17.) Leser asserts that USB has commenced foreclosure proceedings against the Borrowers for both Loans and that a Washington state court has appointed a receiver of rents for the Seattle property, but USB has "fail[ed] to concede or advise this court that any rents received, or any proceeds of a foreclosure sale (if it has not occurred) would be credited against any judgment" against Leser. (*Id*.) According to Leser, USB "cannot be permitted to receive rents without credits being applied to any judgment entered and, if and when either or both of the subject properties are sold, additional credits against any judgment against [Leser] must be recognized." (*Id*.)

USB's reply in support of its fees motion emphasizes
that USB's interest calculations, which Leser claims are
unexplained, are in fact provided in the series of monthly
commercial loan invoices attached to the Affidavit of Gregg
Gehrke dated January 28, 2013 (the "loan invoices"). (Reply at
2-3.) The monthly loan invoices demonstrate what LIBOR rate was
in effect and how the resulting interest was compounded onto the
balances due and owing. (*Id.*) With respect to Leser's
insistence that USB's requested "late charges" are disguised
liquidated damages, USB argues that the late charges are indeed
"fees" that come within the meaning of the relevant Guaranties'
provision for payment by Leser of "all principal, interest and
all fees and costs of the Bank." (*Id.* at 3-4.) USB also
observes that the Loan Agreements provide for liquidated
damages, even if the court accepts Leser's characterization of
the late charges as liquidated damages. (*Id.* at 4.)

Furthermore, USB asserts that Leser's general
objection to USB's requested fees and hourly rates is too vague
and conclusory to justify a reduction in its requested fees.
(*Id.* at 4-5 (citing cases).) USB also argues that the lack of a
retainer agreement in its motion has no significance where, as
here, the relevant state law rules requiring submission of a
retainer agreement expressly do not apply to "'representation
where the attorney's services are of the same general kind as

previously rendered to and paid for by the client.'" (*Id.* at 5 (quoting 22 N.Y.C.R.R. § 1215.2(2)).) Because USB is a longstanding client of Reed Smith and its previous counsel in this case, Miller Nash, neither of these firms has retainer agreements with USB. (*Id.* (citing Gehrke 3/18/13 Aff. ¶ 15).) Moreover, contrary to Leser's suggestion in his opposition, USB denies an arrangement between USB and its counsel such that USB's counsel would only seek attorneys' fees for this case from Leser himself, and not from USB. (*Id.* at 5-6 (citing Gehrke 3/18/13 Aff. ¶ 17).)

USB's reply brief also rebuts Leser's argument that the nature of this litigation does not justify USB's requested hours and rates for its attorneys. According to USB, this case was commenced by Leser, who "strenuously fought this case every step of the way, and to the very end," and which required labor-intensive discovery, a total of 22 depositions, including two expert witness depositions, pretrial motions, and several discovery motions. (*Id.* at 6.) Additionally, the court's denial of USB's summary judgment motion does not preclude awarding fees and costs for USB's unsuccessful summary judgment motion where, as here, USB ultimately prevailed at trial. (*Id.* at 6 n.6 (citing cases).) USB further observes that Leser's arguments regarding Reed Smith's supposed overstaffing and partial redactions of its time entries are vague, devoid of

specific reference to any particular time entries, and are generally unsupported by the applicable law in New York, which permits a fee award even when billing records are partially redacted. (*Id.* at 7-9 (citing cases).)

Moreover, with respect to Leser's argument that the instant judgment amount should be offset by the amount of any rents or sale proceeds received by the court-appointed receivers for the Philadelphia and Seattle properties, USB argues that only those receivers are authorized to collect those rents, not USB, and thus Leser's "contentions of 'double-dipping' on collection of rent or proceeds of sales is fabricated." (*Id.* at 9.) Finally, USB's reply brief provides the documentation or "back-up" for the costs of various disbursements, *e.g.*, court filing fees and duplicating costs, which Leser complains were not attached to USB's initial motion papers. (*Id.*)

## DISCUSSION

### I.   Choice Of Law

A federal district court sitting in diversity must apply the choice of law rules of the forum in which it sits. *See Bakalar v. Vavra*, 619 F.3d 136, 139 (2d Cir. 2010). Under New York law, where a case involves a contract with a clear choice-of-law provision, "[a]bsent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the

transaction." *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000). This principle, however, occasionally contradicts the general rule that where neither party raises the issue of choice-of-law and cite exclusively to New York law, such "'implied consent' . . . is sufficient to establish choice of law'" in the Second Circuit. *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n. 4 (2d Cir. 2001)).

Here, both the Philadelphia and Seattle Guaranties specify that Virginia law should apply in "matters of construction, validity and performance." (USB Trial Exhibits X4, Y4, T8, U8, and V8.) Neither party's legal memoranda submitted in connection with USB's motion for fees and costs addresses which state's laws should be applied to resolve the instant motions, but both parties cite exclusively to New York law in their legal memoranda. Under these circumstances, courts in this circuit have applied the law of a state other than the one specified in a contract's choice-of-law provision where the parties have failed to address the issue and also cited exclusively to the alternative state's laws. *See, e.g., Berkshire Bank v. Tedeschi*, No. 11-cv-0767, 2013 WL 1291851, at *4, 13 (N.D.N.Y. Mar. 27, 2013) (applying New York law to prevailing summary judgment movant's request for attorneys' fees

provided by contract at issue, where neither party had explicitly addressed choice-of-law but the "parties' briefs assume that New York law controls the issues presented in this case"); *Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC*, 760 F. Supp. 2d 384, 396-97 (S.D.N.Y. 2011) (finding that parties "consented to application of New York law by briefing all issues under New York law," despite evidence that disputed contract was executed in California); *see also Lehman v. Dow Jones & Co.*, 783 F.2d 285, 294 (2d Cir. 1986) (noting that court was not obliged to undertake an investigation of potential differences between New York and California law and may instead apply New York law when that is the sole law cited by the parties). Because neither party has cited to anything other than New York law or addressed the choice-of-law issue in their legal memoranda,[3] the court finds that the parties have consented to the application of New York law to this motion.

---

[3] Footnote 2 of Mr. Gehrke's Affidavit dated January 28, 2013 indicates that Virginia law should apply at least with respect to the calculation of default interest under the Philadelphia and Seattle Loan Agreements. (Gehrke 1/28/13 Aff., n.2.) USB's memorandum of law in support of its motion, however, does not analyze or even discuss this statement by Mr. Gehrke. By contrast, as discussed above, both USB's initial and reply briefs in support of its motion cite exclusively to New York law, even when addressing the issue of default interest under the Philadelphia and Seattle loans. (*See* Mem. at 1 (analyzing applicable pre- and post-judgment interest "[u]nder New York law," and citing exclusively to New York law; Reply at 3-4, n.4 (citing New York law in support of request for all types of interest and late charges).) Leser also cites exclusively to New York law in his opposition brief. (*See* Opp.) The court will therefore continue to apply New York law to this instant motion.

**II. USB's Request for Interest**

**A. Legal Standards**

Under New York law, prejudgment interest is typically recoverable, as a matter of right, in an action for breach of contract. *Graham v. James*, 144 F.3d 229, 239 (2d Cir. 1998) (citing *Adams v. Lindblad Travel, Inc.*, 730 F.2d 89, 93 (2d Cir. 1984)); *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 93 (2d Cir. 2000) ("[S]ection 5001 [of the N.Y. C.P.L.R.] imposes an affirmative mandate on trial courts; they have no discretion not to award prejudgment interest under New York law."); *see also* N.Y. C.P.L.R. § 5001(a) ("Interest shall be recovered upon a sum awarded because of a breach of performance of a contract."). N.Y. C.P.L.R. § 5004 provides that the rate of interest "shall be 9 per centum per annum, except where otherwise provided by statute." Parties may agree, however, by contract to a different rate of interest than that provided for in section 5004. *See Astoria Fed. Sav. & Loan Ass'n v. Rambalakos*, 49 A.D.2d 715 (2d Dep't 1975) (holding that "the contract rate, rather than the statutory rate, governs the rate of interest after maturity and before judgment"); *Neura Commc'ns, Inc. v. Telron Commc'ns USA, Inc.*, No. 00-cv-9167, 2002 WL 31778796, at *3 (S.D.N.Y. Nov. 15, 2002) ("If the contract provides a rate at which interest is to be calculated, then the contractual rate,

13

rather than the statutory rate of nine percent per year as set forth in [N.Y. C.P.L.R.] Section 5004, governs.").

### i. Prejudgment Interest: Loan Interest, Default Interest, and Per Diem Rates

As noted above, Leser's main contention in opposition to USB's motion seeking prejudgment interest in the amounts prescribed by the Philadelphia and Seattle Loan Agreements is that USB's interest calculations are not adequately explained. (Opp. at 2-4.) The court agrees with USB, however, that the commercial loan invoices attached to Mr. Gehrke's Affidavit dated January 28, 2013 plainly track the application of particular LIBOR interest rates and the resulting compounding of that interest onto the Loans' respective principal amounts. (*See* Gehrke 1/28/13 Aff., Exs. A, B; *see also* Reply at 2-3.) There is thus no merit to Leser's criticism that USB's calculation of its requested interest amounts under the Loan Agreements is unclear or unascertainable.[4]

Further, as specified in the Agreements, the loan interest rate was calculated at LIBOR plus 2.5% and, after the Loans were in default, the default interest rate was calculated at the "loan interest rate" plus 5%, or, put another way, LIBOR plus 7.5%. (*See* Gehrke 1/28/13 Aff., Exs. A, B; *see also* Mem.

---

[4] Indeed, as USB observes, the LIBOR rate applied to each of the Loans is ascertainable based on both the commercial loan invoices sent to the Borrowers, which specify the contractual rate being applied, and from the publicly available LIBOR rates themselves, which can be accessed by any interested party via the internet. (Reply at 2-3, n.3.)

at 2-3; Reply at 2-3.)  Therefore, as of May 10, 2013, applying
the foregoing interest rate, USB seeks $23,432,853.27 for the
Philadelphia Loan, and $27,564,088.83 for the Seattle Loan,
representing the principal of the two loans plus the applicable
loan and default interest amounts calculated in the manner
discussed above.  (Def. Updated Interest Ltr. at 1-2.)

After reviewing USB's submissions and invoices
detailing the compounding and calculation of these amounts, the
court finds them to be accurate and USB will be awarded a total
of $50,996,942.10, representing the principal and interest on
both loans as of May 10, 2013.  Additionally, as discussed
*infra*, interest will accrue on each loan at the *per diem* rates
set forth in USB's May 10, 2013 letter and late charges will
also be added to the overall amounts due and owing on each loan.

### ii.    Late Charges

As discussed above, Leser objects to USB's inclusion
of late charges in the Guaranties' provision obligating Leser to
pay USB, *inter alia*, the "fees and costs of the Bank."  (Opp. at
4.)  Leser asserts that USB's requested late charges should not
be viewed as a type of fee or cost specified in the Guaranties,
and also that the late charges at issue are actually liquidated
damages in disguise.  (*Id.*)

As an initial matter, there is nothing remarkable
about USB's request for late charges as part of the fees and

costs to which it is entitled from Leser according to the Guaranties' express terms. Courts in the Second Circuit have readily awarded late charges of the type sought by USB where, as here, the contract at issue provides for the recovery of fees and costs and the party seeking recovery submits sufficient documentary support. *See, e.g., Red Line Air, LLC v. G. Howard Assocs., Inc*., No. 09-cv-3928, 2010 WL 2346299, at *5 (E.D.N.Y. May 11, 2010), *adopted by*, No. 09-cv-3928, 2010 WL 2348643 (E.D.N.Y. June 8, 2010); *Coated Fabrics Co. v. Mirle Corp*., No. 06-cv-5415, 2008 WL 163598, at *6 (E.D.N.Y. Jan. 16, 2008) (magistrate judge's award of late charge adopted by district judge); *Orix Fin. Servs., Inc. v. Thunder Ridge Energy, Inc*., No. 01-cv-4788, 2006 WL 587483, at *22 (S.D.N.Y. Mar. 8, 2006) (same); *Phoenixcor, Inc. v. Izzy Pnini*, No. 03-cv-7590, 2005 WL 2063829, at *1-2 (S.D.N.Y. Aug. 26, 2005).

Moreover, Leser's assertion that USB's requested late charges are "in essence, liquidated damages," is wholly unsupported by citation to law or any facts adduced at trial or in USB's instant motion. (*See* Opp. at 4.) While Leser's recitation of when liquidated damages are appropriate under New York law may be correct (*see id*. at 4-5), Leser's blanket statement that the late charges are "in essence" liquidated damages is unpersuasive.

Therefore, as set forth in USB's letter dated May 10, 2013, USB is awarded $2,927.67 in late charges with respect to the Philadelphia Loan, and $18,103.94 in late charges with respect to the Seattle Loan.  (Updated Interest Ltr. at 1-2.)  Additionally, the per diem rate of interest for the Philadelphia Loan after May 10, 2013 is $3,754.19431.  (*Id.* at 1.)  The per diem interest rate for the Seattle Loan after May 10, 2013 is $4,433.61.  (*Id.* at 2.)

After adding the late charges and per diem interest as described above, and after calculating loan interest and default interest as previously discussed, the court awards USB (i) $23,435,780.94, representing the total amount due and owing on the Philadelphia Loan as of May 10, 2013; and (ii) $27,582,192.77, representing the total amount due and owing on the Seattle Loan as of May 10, 2013.

**III. USB's Request for Attorneys' Fees**

**A.    Legal Standards**

A determination of the appropriate award for attorneys' fees rests soundly within the discretion of the district court.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  "The party seeking reimbursement bears the burden of proving the reasonableness and necessity of hours spent and rates charged."  *Morin v. Nu-Way Plastering Inc.*, No. 03-CV-405, 2005 WL 3470371, at *2 (E.D.N.Y. Dec. 19, 2005) (citing *New York*

17

*State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136

(2d Cir. 1983)).

### 1. Reasonable Hourly Rate

In *Arbor Hill Concerned Citizens Neighborhood*

*Association v. County of Albany*, the Second Circuit explained

that, when determining the reasonableness of attorneys' fees,

the preferred course is:

> for the district court, in exercising its
> considerable discretion, to bear in mind *all*
> of the case-specific variables that [the
> Second Circuit] and other courts have
> identified as relevant to the reasonableness
> of attorney's fees in setting a reasonable
> hourly rate. The reasonable hourly rate is
> the rate a paying client would be willing to
> pay. In determining what rate a paying
> client would be willing to pay, the district
> court should consider, among others, the
> *Johnson* factors;[5] it should also bear in mind
> that a reasonable paying client wishes to

---

[5] The twelve factors set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc*. are:

> (1) the time and labor required; (2) the novelty and
> difficulty of the questions; (3) the skill required
> to perform the legal service properly; (4) the
> preclusion of other employment by the attorney due to
> acceptance of the case; (5) the customary fee; (6)
> whether the fee is fixed or contingent; (7) time
> limitations imposed by the client or the
> circumstances; (8) the amount involved and the
> results obtained; (9) the experience, reputation, and
> ability of the attorneys; (10) the "undesirability"
> of the case; (11) the nature and length of the
> professional relationship with the client; and (12)
> awards in similar cases.

488 F.2d 714, 717-19 (5th Cir. 1971).

spend the minimum necessary to litigate the
case effectively.  The district court should
also consider that such an individual might
be able to negotiate with his or her
attorneys, using their desire to obtain the
reputational benefits that might accrue from
being associated with the case. The district
court should then use that hourly rate to
calculate what can properly be termed the
"presumptively reasonable fee."

484 F.3d 162 (2d Cir. 2007), *as amended,* 522 F.3d 182, 190 (2d

Cir. July 12, 2007).  "After determining the amount of the

presumptively reasonable fee, the court may use its discretion

to increase or reduce the amount based on the particular

circumstances of the case."  *Chan v. Sung Yue Tung Corp.*, No.

03-cv-6048, 2007 WL 1373118, at *1 (S.D.N.Y. May 8, 2007).  In

addition, "[t]he Supreme Court directed that district courts

should use the prevailing market rates in the community in

calculating the lodestar, or what the Second Circuit is now

calling the 'presumptively reasonable fee.'"  *Lynch v. Town of

Southampton*, 492 F. Supp. 2d 197, 210-11 (E.D.N.Y. June 27,

2007) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  The

community is defined as the district in which the court sits.

*See Arbor Hill*, 522 F.3d at 190; *Lynch*, 492 F. Supp. 2d at 211.

In the Eastern District of New York, depending on the

nature of the action, extent of legal services provided, and

experience of the attorney, hourly rates range from

approximately $300 to $400 per hour for partners, $200 to $300

per hour for senior associates, and $100 to $200 per hour for junior associates. *See Konits v. Karahalis*, 409 F. App'x 418, 422-23 (2d Cir. 2011) (affirming district court decision holding that prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour); *Pilitz v. Inc. Vill. of Freeport*, No. 07-cv-4078, 2011 WL 5825138, at *4 (E.D.N.Y. Nov. 17, 2011) (noting hourly rates of $300-$450 for partners, $200-$300 for senior associates, and $100-$200 for junior associates); *Szczepanek v. Dabek*, No. 10-cv-2459, 2011 WL 846193, at *8 (E.D.N.Y. Mar. 7, 2011) (noting that recent prevailing hourly rates in the Eastern District are $200-$400 for partners and $100-$295 for associates); *Crapanzano v. Nations Recovery Ctr., Inc.*, No. 11-cv-1008, 2011 WL 2847448, at *2 (E.D.N.Y. June 29, 2011) (noting hourly rates of $200-$350 for partners, $200-$250 for senior associates with four or more years of experience, and $100-$150 for junior associates with one to three years of experience), *adopted by* 2011 WL 2837415 (E.D.N.Y. July 14, 2011); *Gutman v. Klein*, No. 03-cv-1570, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009) (approving hourly rates of $300-$400 for partners, $200-$300 for senior associates, and $100-$200 for junior associates).

USB's present fee request includes fees and services performed by two law firms, Reed Smith and Miller Nash. With respect to the services performed by Reed Smith, USB requests an

award of $3,274,683.63 in attorney's fees (Cooper 3/18/13 Aff. ¶ 6) based on the following hourly rates:

| Timekeeper | Title | Hourly Rate 2009 | Hourly Rate 2010 | Hourly Rate 2011 | Hourly Rate 2012 | Hourly Rate 2013 |
|---|---|---|---|---|---|---|
| Steven Cooper, Esq. | Equity partner | $755 | $790 | $700 | $745 | $775 |
| Michael DiCanio, Esq. | Senior associate | $400 | $445 | $440 | n/a | n/a |
| Eric A. Schaffer, Esq. | Equity partner | $830 | $880 | $780 | $790 | n/a |
| John H. Doyle, III, Esq. | Counsel | n/a | n/a | $760 | n/a | $830 |
| Joshua Lewis, Esq. | Senior associate | $465 | n/a | n/a | n/a | n/a |
| Danielle Marlowe, Esq. | Fixed share partner | $585 | $610 | n/a | n/a | n/a |
| Efrat Menachemi, Esq. | Senior associate | n/a | n/a | n/a | $500 | $530 |
| Harry H. Rimm, Esq. | Counsel (2009-2012); Partner (2013) | n/a | $610 | $545 | $570 | $595 |
| David A Scharfstein, Esq. | Junior associate | n/a | n/a | n/a | $440 | $505 |
| Othiamba Lovelace, Esq. | Junior associate | n/a | n/a | $340 | n/a | n/a |
| Gregory Taddonio, Esq. | Fixed share partner | $445 | $470 | $490 | $505 | n/a |
| Mary Baerga | Paralegal | $300 | $320 | $285 | $300 | $315 |
| Eugenia S. Hoyle | Paralegal | n/a | n/a | n/a | $275 | $290 |
| Henry Reichner, Esq. | Fixed share partner | $580 | $600 | $625 | $650 | n/a |
| Joseph Filloy, Esq. | Associate | n/a | n/a | $300 | $350 | n/a |
| Melanie A. Garza | Paralegal | n/a | n/a | n/a | n/a | $255 |

| John B. Worobij | Other | n/a | n/a | n/a | $275 | $290 |
|---|---|---|---|---|---|---|

(Cooper 2/8/13 Aff., Ex. A ("Reed Smith Fee Summary").) The court finds that, notwithstanding the attorneys' experience, and considering the other case-specific factors articulated by the Second Circuit in *Arbor Hill*, the requested hourly rates for Reed Smith's attorneys are not reasonable in this district. Leser's argument that the lack of a retainer agreement is required under New York law to award attorneys' fees is meritless, however, because USB's longstanding relationship with the law firms engaged in this matter obviates the need for a retainer agreement before determination of reasonable hourly rates. *See* 22 N.Y.C.R.R. § 1215.2(2).

### a.   Inclusion of Fees and Costs Resulting from the Foreclosure Proceedings

As discussed earlier, USB's motion for attorneys' fees includes hours expended by Reed Smith and Miller Nash attorneys on the foreclosure proceedings for the Seattle and Philadelphia properties. (Mem. at 7, n.4.) This aspect of USB's request, while apparently grounded in the text of the loan documents accompanying the Guaranties at issue (*see id.*), appears premature at this time. For instance, as USB stated in its reply brief, the Seattle foreclosure proceeding is still ongoing and the property has not yet been sold; a receiver has been

appointed to take over the operations of the Seattle property and to sell its assets and collect proceeds therefrom. (*See* Reply at 9, n.11; Gehrke 5/3/13 Aff., Ex. A at 2 (Receiver's Certificate describing sources of receiver's payment).) The attorneys' fees and costs associated with the Seattle foreclosure proceedings are therefore likely to increase, and the final amount will be offset by any proceeds realized from the foreclosure sale. Similarly, the Philadelphia foreclosure proceeding is far from complete -- according to USB, the Philadelphia Borrowers filed for bankruptcy on January 7, 2013, forestalling the foreclosure proceedings. (Reply at 9, n.11.) Therefore, the fees and costs associated with the Philadelphia foreclosure will also therefore increase.

Under these circumstances, the court denies USB attorneys' fees for the foreclosure proceedings on both the Seattle and Philadelphia properties at the present time, without prejudice to USB's ability to seek its total fees through the respective, separate foreclosure proceedings of the Seattle and Philadelphia properties. Accordingly, the court will not award USB the fees billed by Reed Smith attorneys Gregory Taddonio, Esq., Eric A. Schaffer, Esq., Henry Reichner, Esq., and Joseph Filloy, Esq., all of whom worked exclusively on the Philadelphia foreclosure proceeding. (*See* Cooper 1/28/13 Aff., Ex. B.) The court has also removed the fees billed by Miller Nash's

attorneys, who worked exclusively on the Seattle foreclosure proceeding.  (*See* Cooper 2/8/13 Aff. ¶¶ 10-12.)

Moreover, for the reasons set forth above, the court will not grant USB's request for reimbursement of the $94,225.00 advance it made to the Seattle receiver, because such reimbursement will also be resolved by the completion of the Seattle property foreclosure sale.  (*See* Updated Interest Ltr.; Gehrke 5/3/13 Aff. ¶ 3.)  Leser's argument that the amount of the instant judgment should be offset by any amounts received by the receivers of the properties is similarly unavailing at the present time (*see* Opp. at 9), because the amounts that might be received as a result of the foreclosure proceedings also cannot be finalized until the respective proceedings are completed.

**b.  Reasonable Hourly Rates for Reed Smith Partners and Counsel**

Steven Cooper, who served as lead counsel for USB during the trial, is a partner in the commercial litigation group at Reed Smith.  He is admitted to the bar in New York, and he has more than 28 years of experience as a commercial litigator.  (Cooper 3/18/13 Aff., Ex. A.)  Mr. Cooper's biography on Reed Smith's website details his substantial experience in complex commercial litigation, as well as his numerous publications and presentations.  (*Id.*)  Despite Mr. Cooper's impressive resume, the court finds that an hourly rate

of $700-790 for his services in this case is not reasonable.  As
noted above, courts in the Eastern District of New York have
regularly awarded experienced attorneys hourly rates ranging
from $300 to $400-450.  *See Pilitz*, 2011 WL 5825138, at *4
(noting hourly rates of $300-$450 for partners); *Szczepanek*,
2011 WL 846193, at *8 (recent prevailing hourly rates in the
Eastern District are $200-$400 for partners).  Although Mr.
Cooper and his colleagues tried this case on an expedited
schedule, the principles of law governing this case – *i.e.*,
principles of agency and contract law – did not present
particularly complex legal questions.  Based on the prevailing
rates in this district, and in light of Mr. Cooper's experience
and the facts and circumstances in this case, the court finds
that a reasonable hourly rate in this case for Mr. Cooper is
$425.[6]

     Harry H. Rimm, Esq. is a partner in Reed Smith's
commercial litigation group.  (Cooper 3/18/13 Aff., Ex. A.)  He
is admitted to practice in New York, New Jersey, and California,
has been practicing law for more than 18 years, and his
requested hourly rate is between $545 and $610.  (Cooper 3/18/13
Aff., Ex. A; Reed Smith Fee Summary.)  Mr. Rimm served as second

---

[6] While the court's order dated February 21, 2012 found that $350 was a
reasonable rate for Mr. Cooper's services, that finding was made in the
context of a much simpler legal issue; specifically, the reasonable rate for
a partner involved in serving a subpoena upon a non-party, Robert Lovy.  (ECF
No. 137, Order Awarding Fees, dated 2/12/12 ("Lovy Fee Order"), at 10.)

chair during the trial, but his experience in complex civil
litigation appears to be more recent than Mr. Cooper's.  The
court finds that in light of Mr. Rimm's experience, as well as
the significant role Mr. Rimm played at trial, a reasonable
hourly rate for Mr. Rimm is $400.[7]  *See Pilitz*, 2011 WL 5825138,
at *4 (noting hourly rates of $300-$450 for partners);
*Szczepanek*, 2011 WL 846193, at *8 (recent prevailing hourly
rates in the Eastern District are $200-$400 for partners).

        Danielle Marlow, Esq. is a partner in Reed Smith's
commercial litigation group.  (Cooper 3/18/13 Aff., Ex. A.)  She
was admitted to practice in New York and New Jersey in 1997,
almost 16 years ago.  (Cooper 3/18/13 Aff., Ex. A.)  Ms.
Marlow's billing entries reveal that she primarily worked on
this case during the discovery and summary judgment phases.
(*See* Cooper 1/28/13 Aff., Ex. B.)  Although Ms. Marlow is an
experienced attorney, she performed substantive research and
drafted motions and discovery materials.  (*Id*.)  In light of Ms.
Marlow's experience and the particular tasks she performed
during this case, the court finds that her requested rate of
$585-$610 is unreasonable.  (*See* Reed Smith Fee Summary.)  The
court therefore finds that $375 is a reasonable rate for Ms.

_____

[7] Again, the court finds that a higher rate for Mr. Rimm's services is
warranted under these circumstances than the rate the court found reasonable
for Mr. Rimm in the context of setting a few award for serving non-party
Robert Lovy with a subpoena (the "Lovy subpoena").  (*See* Lovy Fee Order at
11.)

Marlow's services.  *See Toussie v. Cnty. of Suffolk*, No. 01-cv-6716, 2011 WL 2173870, at *2 (E.D.N.Y. May 31, 2011) (awarding rate of $350 for attorney with approximately 14 years of experience).

John Doyle, III, Esq. is "counsel" at Reed Smith, has more than 40 years of experience as a litigator, and was admitted to practice in New York in 1963.  (Cooper 2/8/13 Aff., Ex. B; *see also* Reed Smith Fee Summary.)  Mr. Doyle's requested hourly rate of $760 to $830, however, is unreasonable in this District even for highly experienced attorneys.  In light of Mr. Doyle's work reviewing USB's summary judgment motion and supporting submissions and providing trial strategy advice to Mr. Cooper as a peer, the court thus finds that $350 is a reasonable rate for Mr. Doyle's services, which is comparable to the rates courts in this District have found reasonable to work performed by experienced attorneys functioning in an "of-counsel role." *Luca v. Cnty. of Nassau*, 698 F. Supp. 2d 296, 305-06 (E.D.N.Y. 2010) (finding $275 hourly rate reasonable for partner with 20 years of experience but who functioned in "of-counsel role" by providing advice to fellow partner).

> **c.    Reasonable Hourly Rate for Reed Smith Associates and Paralegals**

Michael DiCanio, Esq. and Efrat Menachemi, Esq. are senior associates in Reed Smith's commercial and financial

services litigation groups. (Cooper 1/28/13 Aff. ¶ 15; Cooper 3/18/13 Aff., Ex. B.) Mr. DiCanio has more than 6 years of experience in commercial and insurance litigation, and was admitted to practice in New York in 2007. (Cooper 1/18/13 Aff. ¶ 15.) Ms. Menachemi has more than 7 years of experience in commercial and financial services litigation, and was admitted to practice in New York in 2006. (*Id*.) Mr. DiCanio was the senior associate on this case until sometime in 2012, when he left Reed Smith and Ms. Menachemi performed the senior associate work thereafter. (*See* Cooper 1/28/13 Aff. Ex. B.) The hourly rates requested by both Mr. DiCanio and Ms. Menachemi -- $400 to $445 and $500 to $530, respectively -- are considered high in this district for similarly experienced attorneys. *See, e.g.*, *Pilitz*, 2011 WL 5825138, at *4 (noting hourly rates of $300-$450 for partners, $200-$300 for senior associates, and $100-$200 for junior associates); *Crapanzano*, 2011 WL 2847448, at *2 (noting hourly rates of $200-$350 for partners, $200-$250 for senior associates with four or more years of experience, and $100-$150 for junior associates with one to three years of experience). The court therefore finds that an hourly rate of $275 is reasonable for Mr. DiCanio[8] and Ms. Menachemi, who present commensurate levels of experience and responsibility.

---

[8] As observed with respect to Mr. Cooper and Mr. Rimm's reasonable hourly rates, the court's earlier finding of a reasonable rate for Mr. DiCanio's services in connection with the Lovy subpoena (*see* Lovy Fee Order at 12) does

Joshua Lewis, Esq. is also listed as a senior associate attorney on Reed Smith's Fee Summary. (*See* Reed Smith Fee Summary.) According to Mr. Cooper's Affidavit dated January 28, 2013, Mr. Lewis "is a former associate at [Reed Smith], [who] has with more than 7 years of experience," but there are no further details regarding when he was admitted to practice or his area of specialty. (Cooper 1/28/13 Aff. ¶ 15.) Further, Mr. Lewis's attorney biography is not included in the biographies attached to Mr. Cooper's Affidavit dated March 18, 2013. (*See* Cooper 3/18/13 Aff., Ex. A.) Mr. Lewis's time entries demonstrate that he performed drafting and research tasks early on in this case. (*See* Cooper 1/28/13 Aff., Ex. B.) Mr. Lewis's requested hourly rate of $465, however, is high in this district for either senior or junior associates. *See, e.g.*, *Pilitz*, 2011 WL 5825138, at *4; *Crapanzano*, 2011 WL 2847448, at *2. The court thus finds that a reasonable hourly rate for Mr. Lewis is $275, which represents the upper range for junior associates and the lower range for senior associates. *Pilitz*, 2011 WL 5825138, at *4; *see also Protection One Alarm Monitoring, Inc. v. Executive Prot. One Sec. Serv., LLC*, 553 F. Supp. 2d 201, 209 (E.D.N.Y. 2008) ("Where the moving party fails to provide information on the attorneys' and paralegals'

---

not determine his reasonable rate in USB's instant motion, which concerns the reasonable rate for Mr. DiCanio's services as lead senior associate for much broader tasks and ongoing assignments.

backgrounds and experience, courts have used their discretion to award fees at a rate lower than requested.").

David A. Scharfstein, Esq. is a junior associate in Reed Smith's complex commercial litigation group. (*See* Reed Smith Fee Summary; Cooper 3/18/13 Aff., Ex. A.)  Mr. Scharfstein has more than 3 years of experience in commercial litigation and was admitted to practice in New York in 2009.  (Cooper 1/28/13 Aff. ¶ 15.)  Mr. Scharfstein's requested hourly rate of $440 to $505 is above the rates found reasonable by other courts in this District for junior attorneys with approximately three years of experience.  *See Crapanzano*, 2011 WL 2847448, at *2 (finding reasonable rates of $200-$250 for senior associates with four or more years of experience, and $100-$150 for junior associates with one to three years of experience); *Gutman*, 2009 WL 3296072, at *2 (approving hourly rates of $200-$300 for senior associates and $100-$200 for junior associates).  Instead, the court finds that $200 is a reasonable hourly rate in this District for a junior associate with Mr. Scharfstein's experience.

Othiambia Lovelace, Esq. is a junior associate in Reed Smith's commercial litigation and criminal defense groups. (*See* Reed Smith Fee Summary; Cooper 3/18/13 Aff., Ex. A.)  Mr. Lovelace has more than 2 years of litigation experience, and was admitted to practice in New York in 2010.  (Cooper 1/28/13 Aff. ¶ 15.)  Mr. Lovelace's requested hourly rate ranges between $340

and $460 (*see* Reed Smith Fee Summary; Cooper 3/18/13 Aff., Ex. B), which is considered high in this District for a junior associate. Based on the prevailing rates in this District, the court finds that $175 is the reasonable rate for an attorney with Mr. Lovelace's experience and expertise. *See Crapanzano*, 2011 WL 2847448, at *2; *Gutman*, 2009 WL 3296072, at *2.

USB also requests fees for work performed by several non-attorneys: paralegals Mary Baerga, Eugenia S. Hoyle, and Melania A. Garza, and non-attorney John B. Worobij, whose position is unspecified. (*See* Reed Smith Fee Summary.) Although Ms. Baerga and Ms. Hoyle are highly experienced paralegals, USB's requested hourly rate of between $285 and $320 for Ms. Baerga and $275 to $290 for Ms. Hoyle are significantly higher than the rates found reasonable for paralegals in this district. *See Carco Grp., Inc. v. Maconachy*, No. 05-cv-6038, 2011 WL 6012426, at *3 (E.D.N.Y. Dec. 1, 2011) ("In recent years, courts in this district have approved hourly fee rates in the range of . . . $70 to $100 for paralegal assistants."); *Szczepanek*, 2011 WL 846193, at *8 (surveying cases and stating recent prevailing hourly rates in the Eastern District range between $70 and $80 for legal assistants). Given Ms. Baerga's and Ms. Hoyle's extensive experience as litigation paralegals, totaling 50 years between the two, the court finds that $90 for each is comparable to the rates found reasonable for paralegal

services in this District. *See Carco*, 2011 WL 6012426, at *6

(awarding $100 as reasonable rate for work by paralegals and law

clerks). USB's instant motion and supporting submissions,

however, do not provide information regarding the experience

levels of Ms. Garza or Mr. Worobij. In light of the cases cited

above, however, the requested hourly rates of $255 for Ms. Garza

and $275 to $290 for Mr. Worobij exceed those found reasonable

for non-attorneys in this District. The court therefore finds

that $70 is the reasonable rate for tasks performed by Ms. Garza

and Mr. Worobij. *See Szczepanek*, 2011 WL 846193, at *8; *see*

*also Protection One Alarm Monitoring,* 553 F. Supp. 2d at 209

(court has discretion to award rate lower than that requested

where moving party fails to provide support for requested rate).

Finally, the court also observes that an attorney

named Michael Olinik, Esq. performed smaller, discrete tasks on

this case in January 2012. (*See* Cooper 1/28/13 Aff., Ex. A.)

Because there is no information in USB's motion for fees or

supporting submissions regarding Mr. Olinik's position, years of

experience, the court will not award any fees for work performed

by Mr. Olinik, and those hours will be deducted from the overall

reasonable amount of billable hours, as discussed below. *See*

*Carco*, 2011 WL 6012426, at *5 (declining to award fees for work

performed by individuals where moving party did not "provide[]

any information concerning these individuals' positions . . . , their professional backgrounds, expertise, or experience").

Based on the prevailing rates in this district, and in light of each attorney's experience and the facts and circumstances in this case, the court finds that reasonable hourly rates for Reed Smith's attorneys are as follows:

| Attorney | Revised Hourly Rate |
|----------|--------------------|
| Steven Cooper, Esq. | $425 |
| Harry H. Rimm, Esq. | $400 |
| Danielle Marlow, Esq. | $375 |
| John H. Doyle, Esq. | $350 |
| Michael DiCanio, Esq. | $275 |
| Efrat Menachemi, Esq. | $275 |
| Joshua Lewis, Esq. | $200 |
| David A. Scharfstein, Esq. | $200 |
| Othiamba Lovelace, Esq. | $175 |
| Mary Baerga (paralegal) | $90 |
| Eugenia S. Hoyle (paralegal) | $90 |
| Melanie A. Garza (paralegal) | $70 |
| John B. Worobij (non-attorney) | $70 |

### B.   Hours Reasonably Expended

The court next addresses whether the number of hours expended by USB's counsel was reasonable.  A party seeking attorneys' fees "must support that request with contemporaneous time records that show 'for each attorney, the date, the hours expended, and the nature of the work done.'"  *Cablevision Sys. New York City Corp. v. Diaz*, No. 07-cv-4340, 2002 WL 31045855, at *5 (S.D.N.Y. July 10, 2002) (quoting *Carey*, 711 F.2d at 1154); *see also Kingvision Pay-Per-View v. The Body Shop*, No. 00-cv-1089, 2002 WL 393091, at *5 (S.D.N.Y. Mar. 13, 2002)

(denying award of attorneys' fees where information regarding how the fees were accumulated was not provided even though the requested amount of $1,000 was reasonable).

In determining the presumptively reasonable fee, a court should adjust the hours actually billed to a number the court determines to have been reasonably expended. *See Konits*, 409 F. App'x at 421. The number of hours claimed must be "supported by time records [and not be] excessive or duplicative." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 756, 764 (2d Cir. 1998); *see also Hensley*, 461 U.S. at 434 (directing district courts to exclude hours not "reasonably expended"). In adjusting the number of hours, the court "must state its reasons for doing so as specifically as possible." *LeBlanc-Sternberg*, 143 F.3d at 764 (citation omitted).

USB has provided the court with detailed contemporaneous time records documenting the hours worked by the attorneys and paralegals, and describing the work performed. (*See* Cooper 1/28/13 Aff., Ex. B; Cooper 2/8/13 Aff., Exs. B and C; Cooper 3/18/13 Aff., Ex. B.) The total number of hours billed by Reed Smith's attorneys through March 18, 2013 (excluding the hours billed for work in the foreclosure proceedings, as discussed above) on this case is 7,456.43. (*See* Cooper 1/28/13 Aff., Ex. B; Cooper 2/8/13 Aff., Exs. B and C; Cooper 3/18/13 Aff., Ex. B.)

Upon review of USB's submissions in support of its fee request, the court finds that the number of total hours expended by Reed Smith's attorneys is generally reasonable given: (i) the length this case was pending, that is, three and half years; (ii) the substantive and significant motion practice by both parties; (iii) the significant discovery, including but not limited to extensive document productions and the large number of depositions taken (22); (iv) the expedited trial calendar; (v) the examination preparation for thirteen (13) trial witnesses, including two experts; (vi) the extensive pretrial motion practice requiring briefing and oral argument; (vii) the eight-day jury trial itself; and (viii) the post-trial motions. (*See* Mem. at 6-7.)

Although Leser vaguely objects that the total amount of hours billed by Reed Smith "cannot be deemed to have been reasonably expended," Leser fails to reference any time entries that are purportedly duplicative or otherwise unreasonable. (*See* Opp. at 13-15.) Leser has noted, however, that the block billing employed by Reed Smith's attorneys has previously been disfavored by this court. (*See id*. at 15-16; *see also* Lovy Fee Order at 13.) Reed Smith's attorneys' use of block billing "makes it difficult for the court to allocate time to individual activities in order to gauge the reasonableness of time expended on each activity." *Penberg v. Healthbridge Mgmt*., No. 08-cv-

1534, 2011 WL 1100103, at *8-9 (E.D.N.Y. Mar. 22, 2011).

Generally, when billing records reveal repeated use of block

billing, "courts have used percentage reductions 'as a practical

means of trimming fat from a fee application.'" *Penberg*, 2011

WL 1100103, at *9 (quoting *Carey*, 711 F.2d at 1146).

Accordingly, the court will reduce the number of hours expended

by Reed Smith's attorneys by 10 percent.  *See id.* at *9

(reducing hours by 10% in part due to practice of block

billing); *see also Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173

(2d Cir. 1998) (internal quotation marks and citation omitted)

("[T]he court has discretion simply to deduct a reasonable

percentage of the number of hours claimed as a practical means

of trimming fat from a fee application.").

Additionally, as Leser correctly observed in his

opposition to USB's motion for fees and costs, time billed for

Reed Smith's attorneys' work in connection with serving the Lovy

subpoena has been included in USB's instant motion (*see* Opp. at

12; Reply at 7 n.6; *see also* Cooper 1/28/13 Aff., Ex. A), even

though the court already ordered payment of the reasonable fees

associated with service of the Lovy subpoena in its Memorandum

and Order dated February 21, 2012.  (*See generally* Lovy Fee

Order.)  In order to avoid granting USB a double recovery for

the fees associated with serving the Lovy subpoena, the court

has subtracted the hours billed by Reed Smith's attorneys for

that task from the total number of hours sought by USBs in its current motion.[9]

Therefore, after incorporating the aforementioned adjustments for the reasons stated above, the court awards USB attorney's fees in the amount of $1,836,491.40, calculated as follows:

| Timekeeper | Adjusted Hourly Rate | Adjusted Total Hours | Total Adjusted Fee |
|---|---|---|---|
| Cooper | $425 | 1510.992 | $642,171.60 |
| Rimm | $400 | 1018.665 | $407,466.00 |
| Marlow | $375 | 292.41 | $109,653.75 |
| Doyle | $350 | 16.02 | $5,607.00 |
| DiCanio | $275 | 982.53 | $270,195.75 |
| Menachemi | $275 | 527.31 | $145,010.25 |
| Lewis | $200 | 19.53 | $5,370.75 |
| Scharfstein | $200 | 320.4 | $64,080.00 |
| Lovelace | $175 | 64.44 | $11,277.00 |
| Baerga | $90 | 1625.76 | $146,318.40 |
| Hoyle | $90 | 302.49 | $27,224.10 |
| Garza | $70 | 10.35 | $724.50 |
| Worobij | $70 | 19.89 | $1,392.30 |
| | | | |
| **TOTAL** | | | **$1,836,491.40** |

## IV. USB's Request for Costs

USB also submitted invoices and other documentation that partially support its request for $196,735.02 in total costs. (*See* Cooper 1/28/13 Aff. ¶ 17; Cooper 2/8/13 Aff. ¶ 7; Cooper 3/18/13 Aff. ¶ 7, Ex. C.) According to USB, these costs represent the expense of photocopies, legal research, courier

---

[9] As set forth in the court's Order awarding USB attorneys' fees for service of the Lovy subpoena, Mr. Cooper, Mr. Rimm, and Mr. DiCanio requested fees for 50.17 hours expended on that aspect of this case. (*See* Lovy Fee Order at 14.) Accordingly, 50.17 hours have been subtracted from the total hours billed by these same attorneys in deciding USB's instant motion for fees.

services, and trial transcript costs.  (Cooper 3/18/13 Aff. ¶ 7,
Ex. C.)  Upon review of the attached invoices, however, USB has
not submitted documentation of its costs for photocopies and
legal research, nor has USB itemized the expenses that comprise
its total requested amount of $196,735.02 in costs.

Reasonable and identifiable out-of-pocket
disbursements ordinarily charged to clients are recoverable.
*Pennacchio v. Powers*, No. 05-cv-985, 2011 WL 2945825, at *2
(E.D.N.Y. July 21, 2011) (citing *LeBlanc-Sternberg*, 143 F.3d at
763).  Further, costs are ordinarily recoverable if they are
"incidental and necessary to the litigation."  *Tips Exps., Inc.
v. Music Mahal, Inc*., No. 01-cv-5412, 2007 WL 952036, at *12
(E.D.N.Y. Mar. 27, 2007) (internal quotation marks omitted).
Although most of USB's requested costs appear reasonable despite
USB's failure to itemize its costs, several categories of
requested costs require further discussion.

First, USB requests reimbursement for four invoices
that were also the subject of USB's June 2011 motion for fees
and costs in connection with serving Mr. Lovy with a subpoena.
(*Compare* Cooper 3/18/13 Aff., Ex. C (invoices from Serving
Irving, Inc. for $1,500 and $250 for service attempts on Mr.
Lovy; invoices from UPS for courier service to Mr. Lovy), *with*
ECF No. 114-7, Affidavit of Michael DiCanio, Esq. dated 6/16/11,
Ex. F (invoices from Serving Irving, Inc. for $1,500 and $250

for service attempts on Mr. Lovy; invoices from UPS for courier service to Mr. Lovy).) Because the court already considered these invoices in awarding USB attorneys' fees in connection with the Lovy subpoena, the court will not, for a second time, award USB its reasonable costs for this aspect of the case. (*See* Lovy Fee Order at 14-18.)

Second, USB seeks reimbursement for $3,536.23 in private investigation service fees paid to a security firm, Insite Security, Inc., between June 2010 and August 2010. (*See* Cooper 3/18/13 Aff., Ex. C.) The invoices provided by USB from Insite Security, Inc. describe the services performed as "[l]icense plate inquiry," "research to locate Robert Lovy," and "[s]ervice of Robert Lovy – August 6, 2010." (*Id.*) Although courts in this circuit have awarded costs for investigatory services as part of the "recoverable incidental costs" of litigation, *Sylvester v. City of New York*, No. 03-cv-8760, 2006 WL 3230152, at *14 (S.D.N.Y. Nov. 8, 2006), "the application must be supported by information as to the reasonableness of the rates charged and the services performed," *Tips Exports, Inc. v. Music Mahal, Inc.*, No. 01-cv-5412, 2007 WL 952036, at *12 (E.D.N.Y. Mar. 27, 2007).[10] Here, the invoices provided by USB

---

[10] Some courts in this Circuit have discerned a split in authority regarding whether investigator's fees are recoverable. *See, e.g., J&J Sports Prods., Inc. v. Cargil Dehavalen*, No. 06-cv-1699, 2007 WL 294101, at *4 (S.D.N.Y. Jan. 30, 2007) (noting split and denying request for investigator's fee "[b]ecause there is no clear legal basis for an award of investigation fees

describe the nature of the investigatory services performed, but USB provides no information as to the reasonableness of the rates charged for the services performed by Insite Security, Inc. The court has no way of ascertaining whether such fees are reasonable under the circumstances. Accordingly, the court will apply a 50 percent across-the-board reduction to the requested investigatory fees.

Third, USB has requested reimbursement of $5,000 for its share of the retainer fee paid to mediator John S. Martin in July 2011. (Cooper 3/18/13 Aff., Ex. C.) Given that the court directed the parties to engage in good-faith mediation efforts prior to filing their respective motions for summary judgment

---

as an element of costs and because Leser failed to submit in its affidavit the total number of hours spent on the investigation and the hourly investigative rate"). *Compare Kingvision Pay-Per-View Ltd. v. Cardona*, No. 03-cv-3839, 2004 WL 1490224, at *4 (S.D.N.Y. June 30, 2004) ("There is no provision for a prevailing party to be awarded the cost of its investigator."), *with Tips Exports*, 2007 WL 952036, at *12 (noting split in authority but "emerging" majority view is "if recovery for such fees is to be awarded, the application must be supported by information as to the reasonableness of the rates charged and the services performed"), *Sylvester,* 2006 WL 3230152, at *14 (awarding investigator's fees), *Close-Up Int'l, Inc. v. Berov,* No. 02-CV-2363, 2007 WL 4053682, at *8 (E.D.N.Y. Nov. 13, 2007) ("[C]ourts may, in their discretion, grant investigation costs and other related costs that are reasonable and necessary to the prosecution of Lesers' [] claims.")). In light of the Second Circuit's two recent decisions indicating that reasonable investigatory fees are recoverable when properly supported, the court agrees with the majority view that such fees may be recovered. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111-12 (2d Cir. 2012) (affirming district court's award of attorneys' fees which explicitly included fees for investigative services because district court had "look[ed] to the amount of time spent as reflected in contemporaneous time records, and then decide[d] how much of that time was 'reasonably expended,'" and made the appropriate adjustments); *Mister Softee of Brooklyn, Inc. v. Boula Vending Inc.*, 484 F. App'x 623, 625 (2d Cir. 2012) (no abuse of discretion in district court's refusal to award attorneys' fees, and, therefore, no abuse of discretion in denying reimbursement for private investigator costs, because "[t]he only basis for Appellants' assertion that they are entitled to this reimbursement is that it is recoverable as part of an award of attorneys' fees").

(*see* Minute Entries dated 6/1/11 and 8/5/11), the mediator's fee appears to be among the "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *Pennacchio*, 2011 WL 2945825, at *2. USB has not, however, provided any information to the court regarding the reasonableness of Mr. Martin's fee. Because the court cannot determine whether Mr. Martin's fee retainer is reasonable under these circumstances, the court will reduce the requested fee by 50 percent and award only $2,500 for this expense.

Fourth, two of the invoices attached to Mr. Cooper's March 18, 2013 Affidavit bear no obvious connection to reimbursable litigation costs in this case. The first, an invoice from a German company called "Borsen-Zeitung" which appears to relate to advertising services, represents a fee of approximately $1,831.53, after conversion from the stated Euro dollar value. The second invoice, in the amount of $9.00, is a fee for obtaining a copy of an 11-page Order issued by Judge Thomas Keadle in a West Virginia state Circuit Court. Because the court cannot independently verify the basis for these charges and USB has not supplied any explanation for them, the court will not award costs for these expenses.

Lastly, as noted earlier, USB seeks reimbursement for costs which include, *inter alia*, courier services, legal research, and photocopying fees. (Cooper 3/18/13 Aff. ¶7.)

Notwithstanding the lack of organization of USB's invoices,
which included duplicates and which failed to support several
types of claimed expenses, such as legal research and
photocopying fees, the court identified the following categories
of expenses and costs (not already discussed) for which USB
provided documentation:

| Expense Type | Total Cost |
|---|---|
| Discovery vendors | $5,388.10 |
| Transcript costs | $50,072.81 |
| Subpoena service fees | $375.00 |
| Fees for USB's expert, Peter Tytell | $68,003.58 |
| Title search services | $772.23 |
| Witness appearance fees | $170.00 |
| Certified copy fees | $330.34 |
| UPS delivery fees | $3,132.12 |
| Service and subpoena fees for R. Lovy | $822.63 |
| **TOTAL** | **$129,066.81** |

Despite the lack of information in USB's submissions
regarding the reasonableness of the costs listed above, the
court's familiarity with the transcript services in this
District and courthouse enable it to find that the amount
requested for transcript fees, $50,072.81, is reasonable.
Similarly, the court's familiarity with standard witness
appearance fees and the fees for obtaining certified copies
permits the conclusion that the amounts requested for these
expenses ($170.00 and $330.34, respectively) are reasonable.  In
the absence of any additional information, however, the court
cannot determine whether the balance of USB's requested costs is

reasonable and will instead apply a 25 percent across-the-board adjustment to the remainder of USB's costs. *See, e.g., Goldberg v. Blue Ridge Farms, Inc.*, No. 04-cv-5098, 2005 WL 1796116, at *6 (E.D.N.Y. July 26, 2005) (applying 25% reduction in award for costs of photocopying and legal research where party seeking reimbursement provided no documentation or information regarding reasonableness of costs sought).

After applying the specific reductions and adjustments as well as the global cost reduction discussed above, the court will award $91,954.04 in costs to USB.

## CONCLUSION

For the foregoing reasons, USB's motion for attorneys' fees is granted and the court awards USB:

- **$23,435,780.94** in principal, late charges, and interest due and owing on the Philadelphia loan, which will accrue *per diem* interest at the rate of $3,754.19431 on each day after May 10, 2013 until judgment is entered;

- **$27,582,192.77** in principal, late charges, and interest due and owing on the Seattle loan, which will accrue *per diem* interest at the rate of $4,433.61 on each day after May 10, 2013 until judgment is entered;

- **$1,836,491.40** in attorneys' fees and;

- **$91,954.04** in costs.

The clerk of court is respectfully requested to enter judgment in the amounts set forth above in favor of USB and against Leser.  Interest shall accrue on that amount after the date of entry of judgment at the federal post-judgment statutory rate provided by 28 U.S.C. § 1961(a) to the date the judgment is satisfied.

The clerk of court is further respectfully requested to close this case.

**SO ORDERED.**

Dated:    Brooklyn, New York
          May 10, 2013

_____/s/_____

**KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York