```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
ABRAHAM LESER,


            Plaintiff,
                                            MEMORANDUM & ORDER

       -against-                            09-CV-2362 (KAM)


U.S. BANK NATIONAL ASSOCIATION,


            Defendant.
-------------------------------------X
U.S. BANK NATIONAL ASSOCIATION,


            Counterclaim Plaintiff,


       -against-


ABRAHAM LESER,


            Counterclaim Defendant.
-------------------------------------X
```
**MATSUMOTO, United States District Judge:**

Pending before the court is plaintiff and counterclaim defendant Abraham Leser's motion to dismiss this action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) and to vacate the Judgment pursuant to Federal Rules of Civil Procedure 60(b)(5) and 60(b)(6). For the reasons set forth below, the court denies the motion to dismiss this action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2)

1

and denies the motion to vacate the Judgment pursuant to Federal Rules of Civil Procedure 60(b)(5) and 60(b)(6).

**BACKGROUND**

The parties are familiar with the tortuous background of this case. On June 4, 2009, Leser commenced this action against U.S. Bank National Association ("USB"), seeking a declaratory judgment that he did not sign personal guaranties in connection with loans extended by USB for the purchase and development of properties in Philadelphia, Pennsylvania, and Seattle, Washington. (ECF No. 1, Complaint, 6/4/09.) USB subsequently counterclaimed on the guaranties against Leser. (ECF No. 10.) After motion practice and a jury trial, the jury returned a verdict in favor of USB, finding that Leser did in fact sign the personal guaranties. (ECF No. 189, Jury Verdict, 1/14/13.) After significant post-trial motion practice, the court entered Judgment in favor of USB and against Leser in the amount of $52,946,419.15 on May 10, 2013. (ECF No. 231, Judgment, 5/10/13.) The Judgment provided that interest would accrue at the federal post-judgment statutory rate provided by 28 U.S.C. § 1961(a) to the date the Judgment was satisfied. (Judgment at 2.)

After the entry of the Judgment, USB filed a turnover petition in this action because, in addition to failing to pay the Judgment, Leser took steps that USB argued were fraudulent

transfers to conceal his assets, including allegedly transferring his shares in The Leser Group – purportedly valued at $160 million – to his wife and filing a $35 million confession of judgment in favor of certain purported creditors. (ECF No. 241, Turnover Petition, 6/19/13.) The court granted USB's motion for a temporary restraining order against Leser's wife, Edith Leser, and Aron Mandel as nominee for certain purported creditors of Leser (the "Mandel Group"), after finding that USB would likely succeed on the merits of its fraudulent conveyance claims against Leser, Mandel, and Edith Leser. (ECF No. 251, Temporary Restraining Order, 6/20/13.) On July 1, 2013, based on the consent of Edith Leser, the court granted a preliminary injunction against Edith Leser until the resolution of USB's petition for a turnover order. (Order dated 7/1/13.)

After additional discovery and motion practice, the court granted USB's motion for a preliminary injunction against the Mandel Group. (ECF No. 288, Order Granting Preliminary Injunction ("PI Order"), 7/18/13.) The court found, *inter alia*, that USB had shown a likelihood of success on its claim that Leser had obtained the confession of judgment through actual fraud, that USB had shown a likelihood of success on its claims of constructive fraud, and that USB had shown it would suffer irreparable harm in the absence of an injunction against the Mandel Group. (*Id.* at 35.) The court also found that, in the

alternative, USB had shown there were sufficiently serious questions going to the merits of its claims and that the balance of hardships tipped decisively in favor of granting a preliminary injunction to USB. (*Id.*) Accordingly, the court issued a preliminary injunction against the Mandel Group. (*Id.*)

On September 11, 2013, USB moved for an order (i) appointing a receiver over Leser's assets and property, (ii) directing Leser to turn over title to his various assets, and (iii) charging Leser's economic interests in all partnerships and limited-liability companies in which he had an interest with the obligation to make payments toward the unsatisfied Judgment. (ECF No. 306, Motion to Appoint Receiver, for a Turnover Order, and for a Charging Order, 9/11/13.) After considering the parties' submissions, the court granted USB's motion on October 4, 2013. (ECF No. 326, Order Granting U.S. Bank National Association's Motion for the Appointment of a Receiver, Turnover of Assets, and Charging of Assets ("Receivership Order"), 10/4/13.)

After USB alleged that Leser had failed to comply with his legal obligations under the Receivership Order, (ECF No. 341, 11/8/13), the court held a conference in which it reminded Leser of his obligations under the Receivership Order, ordered the various entities subject to the Receivership Order to produce relevant documents, and ordered the parties to meet and

confer concerning briefing schedules for other anticipated motions. (Minute Entry dated 11/19/13.)

The parties subsequently reached a comprehensive and confidential settlement agreement that included, *inter alia*, the withdrawals of appeals and the resolution of all pending claims between the parties. The court approved the settlement agreement on December 31, 2013. (Order dated 12/31/13.)

Leser filed the instant motion on May 7, 2014. (ECF No. 374, Motion to Vacate Judgment, 5/7/14.) USB confirmed in a subsequent letter that it consented to the relief sought by Leser – vacating the Judgment and dismissing the action with prejudice – but took no position on the arguments made by Leser and did not endorse any other aspect of Leser's motion. (ECF No. 381, Letter from Matthew D. Parrott, 5/14/14.)

## DISCUSSION

**A. Legal Standard**

Under Federal Rule of Civil Procedure 60(b)(5), a court may relieve a party from a final judgment "[o]n motion and just terms" if "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). In addition, a court may vacate a final judgment under Federal Rule of Civil Procedure

5

60(b)(6) for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).

The Supreme Court has held that "mootness by reason of settlement does not justify vacatur of a judgment under review" unless there are "exceptional circumstances" present to justify doing so.  *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994).  "[T]he determination is an equitable one, and exceptional circumstances may conceivably counsel in favor of such a course."  *Id.*  Consequently, the Second Circuit has required that "the movant must demonstrate 'equitable entitlement to the extraordinary remedy of vacatur'" and noted that a court should only "vacate a judgment or order mooted by settlement where the relief is equitably justified by exceptional circumstances."  *Microsoft Corp. v. Bristol Tech., Inc.*, 250 F.3d 152, 154 (2d Cir. 2001) (quoting *U.S. Bancorp*, 513 U.S. at 29).

Nevertheless, "equity will ordinarily disentitle a party to vacatur [w]here mootness results from settlement." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 547 F.3d 109, 111 (2d Cir. 2008) (alteration in original) (internal quotation and citation omitted).  In discussing the public interests that weigh against vacatur, the Second Circuit has explained "that mootness by settlement is insufficient to overcome opposing considerations: (i) that judicial precedents enjoy a presumption

6

of correctness; (ii) that society benefits from the resolution of legal questions through orderly procedures; and (iii) that when a case is settled, the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur." *Microsoft Corp.*, 250 F.3d at 154 (internal quotations and citations omitted).

Finally, "[b]y nature, circumstances that are 'exceptional' elude such limits or classification." *Id.* at 155. But courts have found private interests favoring vacatur to include the interest of the parties in settling the matter, *see BMC, LLC v. Verlan Fire Ins. Co.*, No. 04-CV-0105A(Sc), 2008 U.S. Dist. LEXIS 56178, at *4 (W.D.N.Y. July 22, 2008), and whether the motion to vacate is brought by one party or supported by both parties, *see Chamberlain ex rel. Aberdeen Global Income Fund, Inc. v. Aberdeen Asset Mgmt. Ltd.*, 02 CV 5870, 2005 WL 1378757, at *1 (E.D.N.Y. Apr. 12, 2005). To that end, courts evaluate the public interests and private interests in a case to determine whether vacatur is justified by exceptional circumstances. *Compare BMC, LLC*, 2008 U.S. Dist. LEXIS 56178, at *4 (granting motion to vacate judgment after finding that private interests of the parties in settling matter, which was contingent on vacatur of certain sanction orders, outweighed public interests in preserving finality of judgments and

7

development of decisional law), *with Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 236 F.R.D. 175, 177 (S.D.N.Y. 2006) (denying motion to vacate after finding no exceptional circumstances that outweighed public interests in judicial precedents and resolution of legal disputes through orderly procedures even though global settlement was contingent on vacatur).

**B. Application**

Leser first argues that, because the Judgment is based on the facts of this case and applicable only to this case, it has no precedential value for future litigants and is consequently not of great public interest. (ECF No. 375, Memorandum in Support of Motion to Vacate Judgment ("Mem."), 5/7/14, at 5, 7.) The Second Circuit has acknowledged that the value of federal district court precedents is "less compelling" than appellate court opinions because district court opinions and judgments "create no rule of law binding on other courts." *ATSI Commcn's*, 547 F.3d at 112. But the Second Circuit has also held that district court opinions and judgments serve other important public interests: They "enjoy a presumption of correctness," and "society benefits from the resolution of legal questions through orderly procedures," *Microsoft Corp.*, 250 F.3d at 154 (internal citations omitted).

Here, even though the Judgment lacks the precedential value of an appellate court opinion, it still enjoys a

presumption of correctness, and society benefits from the resolution of a legal question through orderly procedures such as the extensive pre-trial and post-trial motion practice and jury trial in this case. (Jury Verdict, Judgment.) In addition, Leser has *already* settled the matter, and therefore forfeited his appellate rights concerning the Judgment and "surrender[ed] his claim to the equitable remedy of vacatur." *Microsoft Corp.*, 250 F.3d at 154 (internal citations omitted). Accordingly, based on the foregoing factors, the court finds that there are in fact important public interests served by the Judgment other than precedential value and that exceptional circumstances do not exist to warrant vacatur.

Second, Leser claims that USB's consent also makes vacatur appropriate, citing cases such as *Chamberlain*, 2005 WL 1378757, at *1, and *Stephen L. LaFrance Holdings, Inc. v. Sorensen*, 283 F.R.D. 499, 501 (E.D. Ark. 2012), where courts considered the fact that both parties sought vacatur. (Mem. at 6-7.) But both cases are distinguishable from the instant case. In *Chamberlain*, the court exercised its discretion and vacated a judgment "in order to permit settlement to proceed" partly because "the victor as well as the losing party [was] in agreement that vacatur would be desirable." *Chamberlain*, 2005 WL 1378757, at *1. In this case, however, the parties executed a settlement agreement, and the court's approval of the motions

to dismiss and to vacate the Judgment are thus *not* necessary for settlement to proceed. As a result, USB's consent to vacatur has diminished importance and is not an "exceptional circumstance[]." *ATSI Commcn's, Inc.*, 547 F.3d at 113.

In *Sorensen*, the court sanctioned government lawyers for wrongfully removing a case "in an attempt to thwart legitimate state-court civil discovery" but granted vacatur of the sanctions because no party opposed the "essential thrust" of the motion to vacate and the government represented that it would no longer engage in such conduct. *Sorensen*, 283 F.R.D. at 500-501. But Leser, unlike the government in *Sorensen*, has not established that he should be relieved from the prospective effects of the Judgment entered in this case. Indeed, the extensive additional post-Judgment litigation initiated by USB due to Leser's continuing failure to pay the Judgment, including a turnover petition, motions for injunctive relief, and the appointment of a receiver, demonstrates that Leser did not appreciate his legal obligation to pay the Judgment in a timely manner and instead prolonged the litigation with USB even after a jury rejected his allegations. (*E.g.*, Jury Verdict, PI Order.)

To that end, Leser's additional argument that the Judgment in an action he initiated has hurt his reputation and reduced the willingness of lenders to extend credit to him lacks

both merit or any equitable aspects. (Mem. at 7-8.) Leser claims that the Judgment "negatively affects the negotiations and the terms that Mr. Leser's businesses are able to obtain from lenders, at a potential future cost of hundreds of thousands to millions of dollars in future interest even though USB has released him from the judgment." (*Id.* at 8 (citing Declaration of Abraham Leser in Support of Motion to Vacate Judgment, 5/7/14, at ¶¶ 2-7).)[1]

The court is not persuaded that the prospective negative effect of the Judgment on Leser's reputation, his businesses, or the partners and investors in his businesses merits vacatur. In fact, the public has a strong interest in knowing that Leser filed a lawsuit in federal court alleging he did not sign certain guaranty documents in an effort to avoid paying back tens of millions of dollars in debts, (Complaint), and that a jury rejected Leser's allegations and found that he did in fact sign the documents and incur the debts, (Jury Verdict, Judgment). The court finds it entirely fitting, equitable, and just that the Judgment in this case may inform Leser's future potential creditors of the extraordinary measures he took to avoid paying back his debts to USB. *See ATSI Commcn's, Inc.*, 547 F.3d at 114 (denying motion to vacate

---

[1] The court notes that Leser does not provide any specific examples of difficulties with prospective lenders in his declaration or motion. Even if Leser had provided specific examples, the court would still deny the motion for the reasons set forth in this Memorandum & Order.

11

district court judgment sanctioning lawyers because such a judgment was not insignificant and party's counsel sought vacatur "precisely to avoid the public's scrutiny"); *Mattel, Inc.*, 236 F.R.D. at 177 (denying motion to vacate judgment in part because "there is a public interest in knowing" that a party's lawsuit alleging copyright infringement was not meritorious).[2]

## CONCLUSION

For the reasons set forth above, the motion to vacate the Judgment in this case pursuant to Federal Rules of Civil Procedure 60(b)(5) and 60(b)(6) is denied, and the motion to dismiss the action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) is also denied.

**SO ORDERED.**

_____/s/_____

KIYO A. MATSUMOTO
United States District Judge

Dated:   Brooklyn, New York
         May 22, 2014

---

[2] For the reasons set forth in this Memorandum & Order, the court also denies the motion to dismiss this action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).